**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION**

**AUSTIN CLARK,**

*Plaintiff*

*V.*

**UNIVERSITY OF LOUISVILLE***,* a public university in Louisville, KY; **NEELI BENDAPUDI,** President of the University of Louisville, in her official and individual capacities; **LORI GONZALEZ**, Executive Vice President and University Provost at the University of Louisville, in her official and individual capacities; **TONI GANZEL,** Executive Dean of the School of Health Medicine at the University of Louisville, in her official and individual capacities; **BILL CRUMP**, Assistant Dean, University of Louisville School of Medicine, Madisonville Campus, in his official and individual capacities; **OLIVIA MITTEL**, Assistant Dean, University of Louisville School of Medicine, Jackson Street Campus, in her official and individual capacities; **MONICA SHAW,** Assistant Dean, University of Louisville School of Medicine, Jackson Street Campus, in her official and individual capacities; **SARA PETRUSKA**, Clerkship Director, OBGYN Department, University of Louisville School of Medicine, Jackson Street Campus, in her official and individual capacities; **THOMAS NEELY**, Instructor, University of Louisville School of Medicine,

Case No. 3:21-cv-480-DJH

**TRIAL BY JURY DEMANDED**

1

Madisonville Campus, in his
official and individual capacities; **MOHAN RAO**, Instructor, University of Louisville School of Medicine, Madisonville Campus, in his official and individual capacities; **JULIANNA BROWN,** Clerkship Director, Internal Medicine, University of Louisville School of Medicine, Jackson Street Campus, in her official and individual capacities; **JENNIFER KOCH**, Program Director, Internal Medicine, University of Louisville School of Medicine, Jackson Street Campus, in her official and individual capacities; **CRISTINA GILES**, Resident Doctor, Internal Medicine, University of Louisville School of Medicine, Jackson Street Campus, in her official and individual capacities; **JON ALEXANDER**, Resident Doctor, Internal Medicine, University of Louisville School of Medicine, Jackson Street Campus in his official and individual capacities; **SAMUEL REYNOLDS**, Resident Doctor, Internal Medicine, University of Louisville School of Medicine, Jackson Street Campus, in his official and individual capacities.

*Defendants*

## PLAINTIFF'S VERIFIED COMPLAINT

Plaintiff, Austin Roy Clark, by and through counsel, and for his Verified Complaint against Defendants, hereby states as follows:

## INTRODUCTION

1.      The guiding principle of a Medical School education is to educate and train future members of the medical profession.  A medical education consists of a four

(4) year educational and clinical experience, then there is a residency/intern program. Upon completion the individual is a fully licensed and independent medical doctor.

2.      Additionally, a medical school, just like any other college campus, should be a forum of free discussion of medical and related issues and ideas, both within and without the academic clinical environment, and, particularly with the instructing faculty.

3.      Further, a medical school, just like any other college campus, must allow its students to have sufficient intellectual and academic freedom for discussion and exploration of not only personal beliefs and opinions but also exploration of medicine in general, including various psychosocial aspects of the trainees and their training environment.

4.      Austin Clark ("Clark") holds traditional Christian beliefs and conservative political beliefs which medical schools tend to discriminate against and/or hold hostile biases toward.[1]

5.      Additionally, and unfortunately, there is also a custom of well-documented demeaning and harassing behavior directed toward medical students and trainees, including at the University of Louisville School of Medicine ("ULSOM"), behavior that is particularly hostile against religious and conservative students.[1,2,3,4,5]

---

[1] Religious Discrimination in the Selection of Medical Students: A Case Study; Gunn & Zenner
[2] Human Rights Violations in Medicine; Pamela Wible, M.D.
[3] The House of God; Samuel Shem
[4] Medical Student Abuse: Incidence, Severity, and Significance; Silver
[5] Medical Trainees Fear Retaliation for Reporting Abuse; MedScape; Frellick

6.      Clark found such (1) viewpoint discrimination and restrictions of his First

(1st) Amendment Rights and (2) demeaning behavior directed at him to be

objectionable and repeatedly voiced his concerns to Defendants (a) verbally, (b) in

writing, and eventually (c) through complaints with the Health and Human

Services Office for Civil Rights ("HHS OCR") and Liaison Committee.for Medical

Education ("LCME") and this federal complaint.

7.      Clark neither denies nor disputes that the ULSOM has a pedagogical interest

in enforcing "professionalism" standards,  but Clark's expressions were not made

at inappropriate times or places, nor were his comments disruptive or offensive,

nor did they undermine the school's basic educational mission, nor did they

infringe upon the rights of others (including patients and their safety and care, as

Clark's expressions did not occur in the presence of patients and are at the best

only peripherally and distantly related to patient care) that in any way can be

reasonably regulated by the University.

8.      The University and ULSOM Administrators failed to alleviate or correct this

demeaning behavior in which Clark is belittled and humiliated and retaliated

against through the academic evaluation process and under guise of enforcing

technical standards solely as a result of (1) his protected pro-life and religious

speech on campus, and (2) expressing his protected concerns in the academic

clinical environment and before the Student Promotions Committee and

Defendant Ganzel.

9.      Defendants retaliated against Clark for exercising his First (1st) Amendment rights to free speech and expression and intellectual inquiry at an academic medical center; thus, they have deprived him of lawful process otherwise due him.

## JURISDICTION & VENUE

10.     This civil rights action raises federal questions under the United States Constitution, particularly the First and Fourteenth Amendments, and the Civil Rights Act of 1871, 42 U.S.C. § 1983.

11.     This Court has original jurisdiction over these federal claims pursuant to 28 U.S.CC. § 1331 and § 1343.

12.     This Court has authority to award the requested damages pursuant to 28 U.S.C. §1343; the requested declaratory relief pursuant to 28 U.S.C. §§ 2201–02; the requested injunctive relief pursuant to 28 U.S.C. 1343 and FED. R. Civ. P. 65; and costs and attorney's fees under 42 U.S.C. § 1988.

13.     Venue is proper in this district and division pursuant to 28 U.S.C. § 1391(b) and JOINT L. Civ. R. 3.1 because Defendants reside in this district and division and/or all of the acts described in this Complaint occurred in this district and division.

## PLAINTIFF

14.     Clark is a resident of Kentucky. He was admitted to ULSOM in the summer of 2017. He completed his first two (2) years at ULSOM quite successfully. He was a medical student on both the Jackson Street Louisville Campus and the Trover

Campus in Madisonville, Kentucky.  And up to the time of his unlawful dismissal from the ULSOM, a third year medical student in good-standing.

## DEFENDANTS

15.     Defendant University of Louisville is a large, urban research, public University located in Louisville, KY.

16.     Defendant Neeli Bendapudi is the President of the University of Louisville.

17.     As President, Defendant Bendapudi is the Chief Executive and Administrative officer of the University.

18.     Defendant Bendapudi's authority and powers include oversight of ULSOM.

19.     Defendant Bendapudi's duties include, among others, authorizing, executing, enforcing, and implementing the policies governing students at the ULSOM.

20.     Defendant Gonzalez is, and was at all times relevant to this Complaint, the Executive Vice President of Health Affairs at the University and the Provost. As Provost she is the Chief Educational and Academic Officer.

21.     Defendant Gonzalez oversees all academic matters at the University of Louisville, including ULSOM.

22.      As President and Provost respectively, Defendants Bendapudi and Gonzalez are and were aware of the retaliatory and unconstitutional actions taken against Clark and did not instruct University personnel, including the other Defendants, to change or reverse those actions to comply with lawful mandates.

23.     As President and Provost respectively, Defendants Bendapudi and Gonzalez have the authority to review, approve, or reject the decisions of other University officials, including the other Defendants.

24.     As President and Provost respectively, either by action or neglect Defendants Bendapudi and Gonzalez have, ratified the retaliatory and unconstitutional decisions regarding Clark that are challenged herein.

25.     Defendant Toni M. Ganzel, M.D., MBA, is the Executive Dean of Health Affairs and Dean of the School of Medicine at the University.

26.     As Executive Dean of Health Affairs, Defendant Ganzel directly oversees all of the educational, health related and student related matters at ULSOM.

27.     Bill Crump, M.D., is an Assistant Dean and the Operating Dean at the Trover Campus, Madisonville, Kentucky. As such, he was authorized to, among other duties, implement university policy, and review, approve or reject the decisions of instructors on the Trover Campus.  As such, Defendant Crump has authorized and approved the retaliatory and unconstitutional decisions regarding Clark which are challenged herein.

28.     Olivia Mittel, M.D.,  M.S., is an Assistant Dean at the Jackson Street Campus. Upon Clark returning to the Jackson Street Campus, she required him to sign a "professionalism  contract."  She is aware of the retaliatory actions against Clark, but does nothing to correct said actions.  She is the recipient of the Mistreatment Complaint filed and emails sent by Clark alleging mistreatment and retaliation

from three (3) internal medicine resident physicians.  She inappropriately and repeatedly fails to correct their retaliatory behavior and allows Clark to be removed from the ULSOM. In such a role, she was authorized to, among other duties, implement university policy, and review, approve or reject the decisions of those over whom she has authority.  As such, Defendant Mittel has authorized and approved the retaliatory and unconstitutional decisions regarding Clark which are challenged herein.

29.     Monica Shaw, M.D., M.A.,  is an Assistant Dean at the Jackson Street Campus. She is aware of the retaliatory acts, and she, along with Mittel, is a recipient of the Mistreatment Complaint filed and emails sent by Clark alleging mistreatment and retaliation from three (3) resident physicians  against Clark, but does nothing to correct said actions.  She, along with Mittel, inappropriately fails to correct the alleged retaliatory behavior and allows Clark to be removed from the ULSOM. In such a role, she was authorized to, among other duties, implement university policy, and review, approve or reject the decisions of the subordinates over whom she has authority.  As such, Defendant Shaw has authorized and approved the retaliatory and unconstitutional decisions regarding Clark which are challenged herein.

30.     Sara Petruska, M.D., is the OB/Gyn Clerkship Director at the Jackson Street Campus. As such, she was authorized to, among other duties, implement university policy, and review, approve or reject the decisions of the OB/Gyn

instructors on both the Trover Campus and Jackson Street campus over whom she has authority. She is aware of the retaliatory actions against Clark, but when meeting with him about the aforementioned, she does nothing to correct such behavior by the other defendants and blames Clark for the retaliatory conduct of Neely, Rao, and Crump. As such, Defendant Petruska has authorized and approved the retaliatory and unconstitutional decisions regarding Clark which are challenged herein.

31.     Thomas Neely M.D., is an Obstetrics and Gynecology instructor at the Trover Campus. he engaged in a pattern of insulting conversations with Clark. Such included calling him "stupid", that he "learned nothing his first two (2) years of medical school" and questioned the way Clark's "brain was working". He further refused to allow Clark to meet with him in his office and required him to sit in a chair in the hallway and speak through an open doorway. When Clark insisted that Neely treat him with some modicum of respect, Neely went to Assistant Dean Crump and insisted that Clark leave the Madisonville Campus and that he (Clark) was not welcome to return to the clinic managed by him (Neely). Neely then awarded Clark a failing evaluation.

32.     Mohan Rao, M.D., is a surgical instructor and Program Director of Surgery at the Trover Campus. He has never had Clark as a student– in fact, he has never met Clark. However, he supported Neely in his insulting behavior toward Clark and supported Neely in having Clark removed from the Trover Campus. In such a role,

he was authorized to, among other duties, implement university policy, and review, approve or reject the decisions of the Surgery and OB/Gyn instructors over whom he has authority on the Trover Campus. As such, Defendant Rao has authorized and approved the retaliatory and unconstitutional decisions regarding Clark which are challenged herein.

33.     Julianna Brown, M.D., is the Clerkship Director of the Internal Medicine program at the Jackson Street Campus. Despite having passed his SHELF examination and otherwise obtaining an overall passing grade for the Internal Medicine Clinic, she chose to take the incorrect and retaliatory opinions of the three residents identified in this complaint, as well as her own incorrect and blatantly retaliatory opinions to fail Clark in the Internal Medicine course. Such conduct resulted in Clark being academically dismissed from the ULSOM. In such a role, she was authorized to, among other duties, implement university policy, and review, approve or reject the decisions of the Internal Medicine Residents over whom she has authority. As such, Defendant Brown has authorized and approved the retaliatory and unconstitutional decisions regarding Clark which are challenged herein.

34.     Jennifer Koch, M.D., is the Program Director of the Internal Medicine program at the Jackson Street Campus. Despite having never met or otherwise knowing Clark and with knowledge of Clark having passed his SHELF examination and otherwise obtaining a numerical passing grade for the Internal Medicine

10

Clinic, she chose to take the incorrect and retaliatory opinions of the three residents named in this complaint, as well as, her own blatant retaliatory opinion to fail Clark in the Internal Medicine course. Such resulted in Clark being academically dismissed from ULSOM. In such a role, she was authorized to, among other duties, implement university policy, and review, approve or reject the decisions of the Internal Medicine Residents and faculty over whom she has authority. As such, Defendant Koch has authorized and approved the retaliatory and unconstitutional decisions regarding Clark which are challenged herein.

35.     Jon Alexander, M.D., is a physician resident at the Jackson Street Campus. He initially signs a memo asserting that Clark exceeds performance expectations. Alexander then, for no good or otherwise justifiable reason, engages Clark in a mildly oppositional conversation which is demeaning to Clark. Clark responds advising such communication is not appropriate. Alexander retaliates by emailing Julianna Brown and requests that Clark fail the Internal Medicine course.

36.     Cristina Giles, M.D., is a physician resident at the Jackson Street Campus. She initially signs a memo asserting that Clark exceeds performance expectations. Approximately three (3) weeks later Giles emails Julianna Brown that Clark has shown poor performance in the Internal Medicine Clinic. This failing was given after and as a result of the First (1st) Amendment activities exercised by Clark.

37.     Samuel Reynolds, M.D., is a physician resident at the Jackson Street Campus. He is a friend of Jon Alexander. At the request of Alexander, Reynolds engages in

an unwarranted assault on Clark and advises Clark that he is not an individual who is wanted to be or otherwise in any way welcome on their medical team. He also is a resident who emails Defendant Brown requesting Clark fail the Internal Medicine Clerkship, as a result of the protected First (1st) Amendment expression of Clark.

## FACTUAL BACKGROUND

38.     ULSOM selects only the best candidates which it believes have the intellectual rigor and personal fortitude to complete the difficult learning process and achieve a medical degree.

39.     Plaintiff was admitted to ULSOM in July 2017.  In order to be admitted to ULSOM, Plaintiff passed a rigorous admission process.

40.     Clark achieved passing grades and completed the standard first year curriculum. This instruction took place on the Jackson Street campus.

41.     Clark achieved objectively passing grades in all courses and completed the standard second year curriculum.  This instruction took place on the Jackson Street Campus.

### *The Religous Pro-Life Event Protected by the First (1st) Amendment and Institutional-Wide Opposition*

42.     On 6 November, 2018, as part of his second year at ULSOM Clark and as president of the student organizations, Medical Students For Life and the Christian Medical and Dental Association, Clark invited a Christian speaker, Alex McFarland, to make an academic presentation as to when life actually began.

43.    This generated substantial opposition from many faculty and students. Some of the flyers announcing the presentation were removed from the place they had been posted.  ULSOM requested that Clark and his organization pay for security and for the first time at ULSOM, after the presentation, ULSOM limited the space and locations where posting speaker announcements could occur.

44.    Clark admits that the speaker put forth ideas that are not held by the majority of the students or faculty at ULSOM leading to opposition and retaliatory conduct from the administration that led to substantial mental health decline in Clark.

### The Protected First (1st) Amendment Expression with Neely in the Academic OB/Gyn Clinical Environment

45.    In the summer of 2019, Plaintiff began his third year at ULSOM.  This academic curriculum takes place on the Trover Campus in Madisonville, Kentucky.

46.    After successfully completing the Family Medicine course, the next class is Obstetrics and Gynecology.  On 10 August,  2019, Plaintiff participated in respectful verbal oppositional activity regarding his treatment from Defendant Neely within the academic clinical environment that is protected by the First  (1st) Amendment by asserting "you are not going to treat me that way" and "you are the worst preceptor I have ever had." The speech did not occur in the presence of patients and was said to Neely in his office. Neely called Clark "stupid" and other untrue and derogatory terms and even questioned if Clark's "brain was working." Clark insisted to Neely that as a student he was not immune from instructional

criticism and the corrective opinions of faculty, but that demeaning, derogatory terms directed at him were inappropriate and unprofessional in violation of University and Community Standards.

47.     That same day, as a result of Clark's First (1st) Amendment activity with Neely, Neely had a conversation with Defendant Rao, a surgical instructor about his interaction with Clark in the academic clinical environment. Both instructors then went to Bill Crump, the Assistant Dean and administrator of the Trover Campus who upon conversation with Clark, and after conversation with Neely and Rao, said to Clark that he "cannot say that to a senior faculty member."

48.     After and as a result of the conversation mentioned above, instructor Neely refused to meet with Plaintiff in his office. All further office conversations within the academic clinical environment required Plaintiff to sit in a chair in the hallway and speak through the doorway to Neely leading to substantial mental health decline in Clark.

49.     On 14 August 2019, Defendant Rao sent a letter to Defendant Crump in which he asserted that he and the other Madisonville Surgical and OB/Gyn faculty "will not accept him (Clark) as a student here (Madisonville Trover Campus)."

50.     On/about 15 August 2019, as a result of the actions of Rao and Neely, and their conversations with Crump, Clark is advised via letter from Crump that it is not "in his best interest for him to return to the Trover Campus," and, based upon his treatment at the Trover Campus and the previous retaliatory conduct in response

to Clark's activities with his student organizations, Clark sought out in-patient psychiatric treatment.

### The "Professionalism Contract"

51.     On/about 15 September 2019, Defendant Olivia Mittel required Clark to sign a "Professionalism Contract" as a result of the interactions with Neely aforementioned in order to return to classes. Mittel also required Clark to either (a) take a medical leave due to depression and mental health developments that arose at least in significant part to the retaliatory conduct from Thomas Neely, Mohan Rao, and Bill Crump or (b) face the Student Promotions Committee to face potential dismissal from the School of Medicine.

52.     No other students have been or are required to sign such a document or have been or are issued such ultimatums.

53.     On/about 05 October 2019, Sara Petruska and Defendant Olivia Mittel met with Plaintiff at their request to discuss "his (Clark's) insight" regarding the retaliatory conduct from Thomas Neely and Mohan Rao, during which, upon Clark's attempts at a defense, Clark is told that he "only sees himself as a victim" by Defendants Petruska and Mittel.

### The Protected First (1st) Amendment Expression in the Academic Internal Medicine Clinical Environment

54.     On 07 February 2020, Plaintiff engaged in respectful verbal oppositional activity protected by the First (1st) Amendment in the academic clinical environment with Jon Alexander, a resident physician in the Internal Medicine

Program, regarding his (Clark's) treatment by Defendant Alexander. Clark

asserted Alexander's criticism and overbearing behavior toward Clark regarding

his performance on wards, was unwarranted, as the attending physicians and

other residents seemed to rate his performance as satisfactory and exceeding

expectations. After the contested conversation, during which Clark asserts that

Jon's criticism is "unjust" and "unfair," Alexander asserts that "I am a third-year

resident and you are a student" then issued a failure for the Internal Medicine

Clinic, despite a few days earlier having previously issued a signed memorandum

stating that Plaintiff had actually exceeded expectations in the Internal Medicine

clinical environment.

55.     On 10 February 2020 at approximately 10:30 PM, Samuel Reynolds, a

resident physician in the Internal Medicine Program and friend and colleague of

Jon Alexander, emails the Internal Medicine Clerkship Director, Defendant Brown,

and recommends Plaintiff be removed from and failed for the Internal Medicine

Clinical course immediately as a result of the aforementioned protected First (1st)

Amendment activity with Jon Alexander.

56.     On 11 February 2020 at approximately 7:00 AM, Plaintiff was physically

harassed and bullied by Samuel Reynolds as a result of the respectful First (1st)

Amendment oppositional activity with Jon Alexander on 7 February, 2020. In

response to such treatment, Clark files a "mistreatment" complaint with the

School of Medicine on the same day, 11 February, 2020, which is sent to Defendants

Shaw, Mittel, Koch, and Brown in the hopes of having the retaliatory behavior of Defendant Alexander and Defendant Reynolds properly addressed and corrected. This harassment and bullying led to further substantial psychiatric and mental health developments in Clark.

57.     On 17 February 2020, Cristina Giles, a resident physician in the Internal Medicine Program, solely as a result of the aforementioned protected activities, presented a failing performance evaluation for Plaintiff via email to Defendants Mittel and Brown.  Earlier in the class, and prior to the verbal oppositional activity protected by the First (1st) Amendment with her colleague Jon Alexander and prior to the the formal "mistreatment" complaint against her colleagues that was sent to Defendants Mittel, Shaw, Brown, and Koch, Defendant Giles issued a signed memorandum in which she stated that Plaintiff actually exceeded performance expectations in the Internal Medicine Clinical environment.

58.     On/around 5 March, 2020, despite objectively passing the course as assessed by numerical score, Clark was formally issued a failure for the Internal Medicine Clerkship by Defendant Brown, solely as a result of the aforementioned protected activities and the corresponding retaliatory evaluations.

59.      This wholly–subjective, arbitrary, and capricious failure triggered a meeting with the Student Promotions Committee of the Office of Medical Student Affairs for Clark to face potential dismissal or other adverse disciplinary action.

### *The Dismissal Proceedings and Protected First (1st) Amendment Expression with the Student Promotions Committee and Defendant Ganzel*

17

60.     On/around 10 March, 2020, after Clark retained Counsel, Clark's initial meeting with the Student Promotions Committee was cancelled "due to COVID." At this initial meeting, only Clark's "unprofessionalism" during the Internal Medicine Clerkship was to be addressed – an academic assessment.

61.     On/around 10 March, 2020, on Clark's first day of his subsequent surgery rotation after Internal Medicine, and after Clark's initial meeting with the Student Promotions Committee is cancelled, Defendant Ganzel calls Clark's surgery preceptor on the Operating Room ("OR") Phone – a practice that is not typical.

62.     On/around 25 March, 2020, Clark receives a failing evaluation from his supervising surgery resident, who was subordinate to the preceptor called by Defendant Ganzel on the OR Phone on/around 10 March 2020. In his evaluation of Clark, he asserts that he has "never failed a student before" and references Clark's time on Internal Medicine and Clark's belief of the "biases of his Internal Medicine evaluations."

63.     Clark never discussed or otherwise mentioned his Internal Medicine rotation and evaluations to the surgery evaluator.

64.     On/around 20 May, 2020, Clark's meeting with the Student Promotions Committee was rescheduled for 29 May, 2020. The evidence at the new meeting to be considered was Clark's entire academic record –a change from the previous issues to be addressed of only Internal Medicine and a change that has yet to be properly explained or adequately justified by Defendants.

65.      Between 10 March and 20 May, 2020, University and School of Medicine policy was changed with regards to the dismissal and academic discipline of medical students. The ULSOM  asserted this was solely  due to "annual review" and considering students' entire academic records is "standard practice."

66.      This "standard practice" was not "standard" two months prior.

67.      Between 10 March and 20 May, 2020, Clark attempted to send evidence for his defense for the meeting to Defendant Mittel via email. Upon receipt of some of the materials for his defense, she responds via email that this "students do not usually do this," but she would "consider it."

68.      Due to failure on behalf of the University to correct such demeaning treatment and due to substantial restrictions on Clark's First (1st) Amendment right to free speech, on 27 May, 2020, a complaint was received by the Liaison Committee for Medical Education ("LCME") against the ULSOM which was filed by Clark.

69.      Due to failure on behalf of the University to correct such demeaning treatment and due to substantial restrictions on Clark's First (1st) Amendment right to free speech, on 28 May, 2020, a complaint was received with the Health and Human Services Office for Civil Rights ("HHS OCR") against the ULSOM which was filed by Clark.

70.      Clark was required by Medical Student Affairs to appear at  a meeting on 29, May 2020, with ULSOM's Student Promotions Committee in order to address his

student status due to alleged "unprofessionalism." The Committee and other administrators asserted that they were going to consider "everything" in their review of Clark's student status. As part of his preparation for such, Clark formally requested emails and documents from the ULSOM which he believed necessary to ensure that his defense would be complete and professional.  ULSOM repeatedly denied most of his requests, failed to address questions he posed to administrators, and severely limited his presentation and presence at the meeting.

71.     Upon student deposition, and after further First (1st) Amendment protected speech exhibited by Clark at the meeting with the Student Promotions Committee, in which he (1) reiterated his concerns regarding restrictions on his constitutional right to free speech, viewpoint discrimination, and student abuse, (2) he complains about the lack of due process and lack of transparency, and (3) he attempts to defend himself, the Committee recommended, to Defendant Ganzel, Clark's dismissal from ULSOM on 29 May, 2020, after, and solely as a result of, the various aforementioned protected speech campus, his political and religous viewpoint, the oppositional speech on Clark's clerkships, and speech before the Student Promotions Committee.

72.     On 24 July 2020, after telling Plaintiff that these proceedings and the subsequent discipline and dismissal by the Student Promotions Committee and Defendant Ganzel have "nothing to do with your (Clark's) performance,"

Defendant Ganzel upheld the recommendation of the Student Promotions Committee then issued a formal letter to Clark dismissing him from the ULSOM.

### *Clark's Attempts at a Formal University Grievance and Appeal*

73.    After 24 July, 2020 and through August 2020, Clark attempted to formally appeal his dismissal through the University academic grievance procedures. Due to repeated and continual University obstruction including continued refusal to release records by both faculty and the Office of University Counsel, repeated dishonesty on behalf of personnel, both inside and outside the academic unit of the School of Medicine, Clark was unable to properly grieve or otherwise present his appeal case to the University Grievance Committee ultimately resulting in this federal complaint. The aforementioned activities of Defendants in this paragraph further led to substantial mental health decline in Clark.

### STATEMENT OF LAW and IRREPARABLE HARM

74.    At all times relevant to this Complaint, each and all of the acts and policies alleged herein were attributed to Defendants who acted under color of a statute, regulation, or custom of the Commonwealth of Kentucky, that is Defendants acted under color of state law and authority.

75.    Defendants assert and have explicitly claimed  that the clinical experience for students is solely of an academic nature as students are assessed on their ability to function in such an academic environment and are assessed on their ability to adhere to technical standards.

76.     Clark neither denies nor disputes that the ULSOM has a pedagogical interest in enforcing "professionalism" standards, but Clark's expressions were not made at inappropriate times or places, nor were his comments disruptive or offensive, nor did they undermine the school's basic educational mission, nor did they infringe upon the rights of others (including patients and their safety and care, as Clark's expressions did not occur in the presence of patients and are at the best only peripherally and distantly related to patient care) that in any way can be reasonably regulated by the University.

77.     Defendants knew or should have known that they were violating Plaintiff's constitutional rights by subjecting Plaintiff to retaliatory adverse disciplinary actions, including but not limited to removing him from student medical teams, issuing arbitrary and capricious failing grades despite Clark objectively passing the courses, and in removing him (Clark) from the ULSOM.  The aforementioned actions were done because of (1) his political and religious beliefs as exhibited by his activities in the campus organizations, Medical Students For Life and the Christian Medical and Dental Association, (2) because of his verbal and written attempts to obtain a modicum of respect as a medical student in a repressive environment, and (3) because of the LCME and HHS OCR complaints filed by Clark.

78.     Furthermore, the faculty of the ULSOM failed to act carefully and deliberately and acted in an arbitrary and capricious manner that substantially departed from accepted academic norms when compared to their treatment of

other students in the dismissal of Clark in violation of his Fourteenth (14th) Amendment Rights.

79.     The decisions that led to the violation of Plaintiff's constitutional rights remain in full force and effect.

80.     Under the First (1st) and Fourteenth (14th) Amendments and under 42 USC § 1983 and § 1988 Clark is entitled to appropriate relief as set forth herein.

81.     Clark has suffered irreparable harm and is suffering irreparable harm from Defendant's retaliatory and discriminatory decisions challenged herein.

82.     Clark has no adequate or speedy remedy at law to correct the deprivation of his rights by Defendants.

83.     Defendants' actions and policies, as set forth above, do not serve any legitimate or compelling state interest and are not narrowly tailored to serve any such interests.

84.     Defendants' retaliatory and discriminatory decisions are not narrowly tailored as applied to Clark because Clark's expression under the First (1st) Amendment does not implicate any of the legitimate interests Defendants might have.

85.     Unless the decisions of Defendants are enjoined, Clark will continue to suffer irreparable injury.

**FIRST CAUSE OF ACTION**
**Violation of Plaintiff's First Amendment Right to Freedom of Speech**
**Retaliation**
**(42 U.S.C. § 1983)**

86.     Plaintiff repeats and realleges each of the allegations contained in this Complaint.

87.     By punishing Austin Roy Clark by (1) submitting him to heightened scrutiny under "professionalism" standards, (2) arbitrarily and capriciously awarding failing grades,  and (3) for his removal from the ULSOM for (a) expressing his pro-life and religious views through the speech made by Alex McFarland on campus and (b) verbally expressing his concerns regarding his and other students treatment within the medical school while on clinical clerkships, Defendants violated his First (1st) Amendment rights.

88.     When Clark filed complaints with the LCME and with HHS OCR, due to University failure to properly address his concerns, he was engaging in speech which the First (1st) Amendment protects.

89.      Clark neither denies nor disputes that the ULSOM has a pedagogical interest in enforcing "professionalism" standards, but Clark's expressions were not made at inappropriate times or places, nor were his comments disruptive or offensive, nor did they undermine the school's basic educational mission, nor did they infringe upon the rights of others (including patients and their safety and care, as Clark's expressions did not occur in the presence of patients and are at the best only peripherally and distantly related to patient care) that in any way can be reasonably regulated by the University.

90.     Clark's interest, as a medical student, at a public university in discussing matters of public concern within the context of teaching and scholarship, within the academic clinical environment, before the faculty of the Student Promotions Committee, and before the leadership of the School of Medicine outweighs Defendants' interest in the efficient provision of services.

91.     Defendants subjected Austin Roy Clark to adverse actions due to the content and viewpoint of Clark's speech, both on and off clinical clerkships, which led to a significant mental health decline in Clark.

92.     Defendants' retaliatory and unconstitutional actions taken against Clark under the guise of enforcing technical standards of the School of Medicine shock the conscience and violate his right to free speech as guaranteed by the First (1st) Amendment to the United States Constitution.

### SECOND CAUSE OF ACTION
### Violation of Plaintiff's First Amendment Right to Freedom of Speech
### Content & Viewpoint Discrimination
### (42 U.S.C. § 1983)

93.     Plaintiff repeats and realleges each of the allegations contained in this Complaint.

94.     By punishing Clark by (1) submitting him to heightened scrutiny under "professionalism" standards, (2) arbitrarily and capriciously awarding failing grades, and (3) for his removal from the ULSOM for (a) expressing his pro-life and religious views on campus and (b) expressing his concerns regarding his and other

25

students treatment within the medical school during the clincial practicum experience, Defendants violated his First (1st) Amendment rights.

95.    Defendants evaluated the content and viewpoint of both (1) the speech of the speaker invited by Clark regarding political and religious perspectives on the pro-life topic and (2) the verbal expressions of Clark regarding the proper treatment of medical students during their clinical practicum experience to determine whether they would and could take any adverse academic actions against him or otherwise punish him based on what he said.

96.    Defendants considered the content and viewpoint of Clark's various expressions, both within and without the academic clinical environment, when they considered adverse academic actions against him which contributed to a significant mental health decline and psychiatric developments in Clark.

97.    Clark neither denies nor disputes that the ULSOM has a pedagogical interest in enforcing "professionalism" standards, but Clark's expressions were not made at inappropriate times or places, nor were his comments disruptive or offensive, nor did they undermine the school's basic educational mission, nor did they infringe upon the rights of others (including patients and their safety and care, as Clark's expressions did not occur in the presence of patients and are at the best only peripherally and distantly related to patient care) that in any way can be reasonably regulated by the University.

98.     Defendants' "professionalism" policies and retaliatory actions taken against Clark, both within and without the academic clinical environment, are unconstitutionally overbroad and blatantly vagrant because they restrict a significant amount of constitutionally protected speech.

99.      Defendants' retaliatory and unconstitutional actions taken against Clark under the guise of enforcing technical standards of the School of Medicine shock the conscience and violate his right to free speech as guaranteed by the First (1st) Amendment to the United States Constitution.

### THIRD CAUSE OF ACTION
### Violation of Plaintiff's Fourteenth Amendment Right to
### Procedural Due Process of Law
### (42 U.S.C. § 1983)

100.    Plaintiff repeats and realleges each of the allegations contained in this Complaint.

101.     The United States Constitution requires far less stringent procedural due process requirements for an academic dismissal when compared to a non-academic dismissal. Specifically, in academic dismissals, the procedure required is (1) notice and opportunity to be heard, and (2) the process must be careful and deliberate. A hearing is not required for academic dismissals.

102.     While Plaintiff neither denies nor disputes that he was given some manner of notice and opportunity to be heard in accordance with academic discipline as defined by the United States Constitution, the faculty and leadership of the School did not conduct academic disciplinary procedures in a careful and deliberate

manner by (a) failing to adhere to University policy and the faculty Code of Conduct, (b) failing to adequately consider alternative methods of discipline as potentially applicable to Clark and as applied to other students, (c) at best misrepresenting and at worst falsifying the official transcription of the meeting and refusing to issue corrections despite Clark's repeated requests, (d) not affording Clark access to documents necessary for his presentation and defense, (e) violating Clark's FERPA Rights, and (f) obstructing Clark's attempt at a formal University grievance to overturn his academic dismissal.

103.     Given the aforementioned, by both definition and reasonable inference, the dismissal process was not careful and deliberate and in violation of Clark's right to procedural due process of law under the Fourteenth Amendment.

**FOURTH CAUSE OF ACTION**
**Violation of Plaintiff's Fourteenth Amendment Right to**
**Substantive Due Process of Law**
**(42 U.S.C. § 1983)**

104.     Plaintiff repeats and realleges each of the allegations contained in this Complaint.

105.     The faculty of the School of Medicine dismissed Clark in an arbitrary and capricious manner that substantially departed from accepted academic norms when compared to their treatment of other students indicating the Committee and persons responsible did not exercise professional judgement.

106.     The faculty were motivated by ill-will, bad-faith, malice, and impermissibility in the form of retaliatory and discriminatory bias as evidenced by

(a) not considering and applying the typical remediation or probationary period as usually offered to medical students who are academically disciplined, (b) awarding highly-questionable and controversial evaluations, (c) not permitting Clark access to information to determine the number or identities of the decision makers, (d) at best misrepresenting and at worst falsifying the official transcription of the meeting and repeatedly refusing corrections despite Clark's repeated requests, (e) not affording copies of or access to documents necessary for his presentation and defense despite repeated requests, (f) changing University and School of Medicine policy prior to his meeting with the Student Promotions Committee for the sole purpose to arbitrarily and capriciously administer discipline to him, (g) violating his FERPA rights throughout the academic disciplinary process, and (h) obstructing Clark's attempt at a formal University grievance to overturn his academic dismissal.

107.    Clark neither denies nor disputes the necessity of technical standards and "professionalism" and that considerable deference should be given to the faculty in academic matters, as the public interest and patient safety is dependent on the integrity of the professional medical program as determined by the faculty who are the most knowledgeable.

108.    Clark does not forgo the inherent subjectivity of some academic assessments and does not assert that academic assessment must always be objective.

109.     However, the selectively-applied standards to excessive degrees as

applied to Clark, and not as applied to other students, and the substantial

departure from accepted academic norms as compared to the treatment of other

students in Defendants' adverse academic actions motivated by ill-will, malice,

bad-faith, and impermissibility shock the conscience and indicate the Committee

and persons responsible did not exercise professional judgement.

110.     Thus, by definition and reasonable inference, the various academic awards

and Clark's dismissal are arbitrary and capricious, shock the conscience, and are in

violation of Clark's right to substantive due process of law as defined by the

Fourteenth (14th) Amendment.

### FIFTH CAUSE OF ACTION
### Violation of Plaintiff's Fourteenth Amendment Right to
### Equal Protection of the Law
### (42 U.S.C § 1983)

111.     Plaintiff repeats and realleges each of the allegations contained in this

Complaint.

112.     Defendants punish Clark for expressing his views regarding the proper

treatment of medical students, abortion and the sanctity of life, and the

application of Christianity and his personal philosophy and beliefs to the practice

of medicine, when there are students who, when expressing contrary views or

faiths (or lack thereof), via Student Organizations and other means, or otherwise

engaging in similar or more severe "unprofessional behavior," while both on and

off the clerkship services, are not subject to the same or similar restrictions or such severe level of academic discipline as applied to Clark.

113.     Defendants take no adverse actions against students, or to the severe degree otherwise taken against Plaintiff, who have not filed complaints with the HHS OCR and the LCME.

114.     Defendants take no adverse academic actions, or otherwise as severe adverse action, against students who take or possess such contrary religious, ideological, or philosophical positions to those executed by the plaintiff.

115.     Defendants take no adverse academic actions, or otherwise as severe adverse action, against students who engage in similar or more severe "unprofessional" behaviors while on clinical clerkships.

116.     No other students have been or are subject to such demeaning, disparaging, and belittling behavior, as to which Clark is subject by Defendants Neely and Rao.

117.     No other students have been or are subject to such demeaning, disparaging, and belittling behavior, as to which Clark is subject by Defendant Crump.

118.     No other students have been or are required to sign such documents or have been or are issued such ultimatums as required by and issued to Clark by Defendant Mittel.

119.     No other students have been or are subject to such demeaning, disparaging, and belittling behavior, as to which Clark is subject by Defendants Mittel, Petruska, and Shaw.

120.      No other students have been or are subject to such demeaning, disparaging, and belittling behavior, as to which Clark is subject by Defendants Giles, Reynolds, and Alexander.

121.     No other students have been or are subject to such demeaning, disparaging, and belittling behavior, as to which Clark is subject by Defendants Brown and Koch.

122.      No other students have been or are subject to such a severe degree of discipline, as to which Clark is subject by the Student Promotions Committee and Defendant Ganzel.

123.     No other students have been or are subject to such obstruction and retaliation as to which Clark is subject by the Defendant University and its representatives.

124.     Therefore, the faculty of the School of Medicine failed to act carefully and deliberately and dismissed Clark in an arbitrary and capricious manner that substantially departed from accepted academic norms when compared to their treatment of other students indicating the Committee and persons responsible did not exercise professional judgement.

125.    Defendants' retaliatory and unconstitutional actions taken against Clark under the guise of enforcing technical standards of the School of Medicine shock the conscience and violate his right to equal protection of law as guaranteed by the Fourteenth (14th) Amendment to the United States Constitution.

### PRAYER FOR RELIEF

WHEREFORE, Clark respectfully requests that this Court enter judgment against Defendants and provide him with the following relief:

A.  A declaratory judgment that Defendants' actions in removing Clark from ULSOM and the subsidiary academic awards violate his First (1st) and Fourteenth (14th) Amendment Rights;

B.  A preliminary and permanent injunction ordering Defendants sued in their official capacities, their agents, officials, servants, employees, and any other persons acting on their behalf:

1.  To restore Clark  as a student in good standing and academically eligible at ULSOM.

2.  To purge Clark's student file of any negative reference to his removal from ULSOM and the arbitrary, capricious, and retaliatory evaluations removed from his academic record.

3. To immediately and forevermore cease any and all retaliatory and discriminatory behavior directed toward Clark and to honor his First (1st) Amendment and Fourteenth (14th) Amendment Rights.

4. To graduate Clark from the University of Louisville School of Medicine in accordance with the customary manner of the School.

C.  Nominal, compensatory, and punitive damages for the violation of Clark's First (1st) and Fourteenth (14th)  Amendment rights.

D.  Clark's reasonable attorneys fees, costs, and other costs and disbursements in this action pursuant to 42 U.S.C. § 1988.

E.  All other further relief to which Clark may be entitled.

Respectfully submitted this 23rd day of July 2021.

_____

TIMOTHY DENISON
235 South Fifth Street
Third Floor
Louisville, Kentucky  40202
Telephone: 502-589-6916
Email: timothydenison1965@gmail.com
Attorney for Clark

ROBERT SMITH
9219 US Highway 42
Suite D-106
Prospect, Kentucky  40059
Telephone: 502-592-3407
Email: rfcsmith@me.com
Attorney for Clark

## DECLARATION UNDER PENALTY OF PERJURY

I, Austin Roy Clark, a citizen of the United States and a resident of the State of Kentucky, here declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that I have read the foregoing, that the foregoing is true and correct to the best of my knowledge and that the foregoing statements that pertain to me are based on my personal knowledge.

Executed this 23rd day of July 2021, at Louisville, Kentucky.

_____

Austin Roy Clark