## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## LOUISVILLE DIVISION

*(Electronically Filed)*

| | | |
|---|---|---|
| AUSTIN CLARK, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | Civil Action No. 3:21-CV-480-DJH |
| v. | ) | |
| | ) | |
| UNIVERSITY OF LOUISVILLE, et al., | ) | |
| | ) | |
| | ) | |
| | ) | |
| Defendants | ) | |

## <u>MOTION TO DISMISS</u>

Defendants Neeli Bendapudi, Lori Gonzalez, Toni Ganzel, Olivia Mittel, and Monica Shaw, in their individual and official capacities (Drs. Bendapudi, Gonzalez, Ganzel, Mittel, and Shaw collectively referred to as "Served Defendants"), by counsel, and pursuant to Fed. R. Civ. P. 12(b)(6), hereby move this Court to dismiss the Plaintiff's Amended Complaint in its entirety. The grounds for this Motion are set forth in an attached supporting Memorandum, which is being simultaneously filed.  A proposed Order is attached as well.

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

*(Electronically Filed)*

| | | |
|---|---|---|
| AUSTIN CLARK, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | Civil Action No. 3:21-CV-480-DJH |
| v. | ) | |
| | ) | |
| UNIVERSITY OF LOUISVILLE, et al., | ) | |
| | ) | |
| | ) | |
| | ) | |
| Defendants | ) | |

## DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT

Defendants Neeli Bendapudi, Lori Gonzalez, Toni Ganzel, Olivia Mittel, and Monica Shaw, in their individual and official capacities (Drs. Bendapudi, Gonzalez, Ganzel, Mittel, and Shaw collectively referred to as "Served Defendants"), by counsel, move to dismiss Plaintiff Austin Clark's Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[1]

## INTRODUCTION

Plaintiff Austin Clark brought this lawsuit after he was dismissed from the University of Louisville School of Medicine for failing his Internal Medicine clerkship and exhibiting extremely unprofessional conduct in the clinical setting towards patients, faculty, and students. Rather than

---

[1] For ease of reference, the other individual defendants, all sued in both their individual and official capacities, are Drs. Bill Crump, Sara Petruska, Thomas Neely, Mohan Rao, Julianna Brown, Jennifer Koch, Cristina Giles, Jon Alexander, and Samuel Reynolds (referred to collectively with the Served Defendants as the "individual defendants"). Upon information and belief, Plaintiff has not yet served the University of Louisville or the defendants listed in this footnote.

show any sign of contrition for his behavior or desire to improve, despite multiple opportunities to do so, Clark refused to admit to any wrongdoing whatsoever. He instead brought this lawsuit, alleging that the true reason he was dismissed was because of his "mainstream conservative, Christian, pro-life beliefs," in addition to his allegedly justified, decorous criticism of his professor.

According to Clark's speculative, conclusory allegations, certain members of the faculty and staff of the School of Medicine[2] were so offended by the beliefs he exhibited in his second year of medical school that during his third year of medical school, when students move from doing purely academic to clinical work, those individuals conspired to engineer his dismissal despite his allegedly otherwise stellar performance. Clark also blames other University officials, as well as the University itself, for allowing these events to transpire. Clark brings claims against the University and fourteen separate individual defendants for violations of his First Amendment rights to free speech and his Fourteenth Amendment rights to due process and equal protection.

Clark's Amended Complaint should be dismissed with prejudice as a matter of law, because the Defendants are entitled to sovereign and qualified immunity for their actions. Further, Clark fails to state a claim for which relief can be granted under either the First or Fourteenth Amendments.

## RELEVANT FACTS

Austin Clark was admitted to the University of Louisville School of Medicine in July 2017. (DN 4, Am. Compl., ¶ 39.) He was dismissed from the University of Louisville on July 27, 2020 due to "deficiencies in [his] clinical clerkships and a pattern of unprofessional conduct that does not conform with the promulgated standards of the School of Medicine, including but not limited

---

[2] Included in the group are a former faculty advisor to Medical Students for Life as well as the author of one of Clark's letters of recommendation that assisted in his admission to the School of Medicine in the first place.

to our Technical Standards, despite repeated opportunities for remediation." (Official Notice of Dismissal from Dr. Toni Ganzel to Austin Clark (July 27, 2020), filed under seal as Exhibit 1 ("Official Notice"), at 1.)

Prior to his dismissal in July 2020, Clark was provided with numerous opportunities to be heard regarding his conduct and the faculty's actions towards him, as well as any other issues he wanted to raise; he was also repeatedly given the opportunity to admit his mistakes and move forward in good faith, but refused to do so. Those opportunities are set forth below.

In Fall 2019, based on feedback from his clinical rotations, Clark was given a contract specifically outlining areas he must improve. (*See* Professionalism Contract signed by Austin Clark and Dr. Olivia Mittel (September 17, 2019), filed under seal as Exhibit 2 ("Professionalism Contract").) The Professionalism Contract outlined the specific course objectives and technical standards that Clark needed to be aware of and "actively working to meet." (*Id.* at 1-2.) Many of those requirements focused on necessary skills that are more difficult to quantify than academic standards, such as those that colloquially constitute a doctor's "bedside manner," and are required for accreditation as a United States medical school by the Liaison Committee of Medical Education. Relevant course objectives included maintaining patient comfort and privacy, demonstrating self-regulation, demonstrating respect for all persons, and treating all members of the care team as professionals. (*Id.* at 1.) Technical standards include communicating "effectively, efficiently, empathetically, and sensitively with patients, their families, health care personnel, colleagues, faculty, staff, and all other individuals with whom they come in contact," and accepting "responsibility for learning, exercising good judgment, and promptly completing all responsibilities attendant to their curriculum and to the diagnosis and care of patients." (*Id.* at 2.)

Clark also participated in a hearing during a meeting of the Student Promotions Committee. (*See* Student Promotions Committee Recommendation from Anthony R. Simms to Toni M. Ganzel (May 29, 2020), filed under seal as <u>Exhibit 3</u> ("Recommendation"), at 1.) The Committee is an advisory committee made up of clinicians and professors from different departments at the School of Medicine. (*Id.* at 1.) Clark came before the Committee when he failed his Internal Medicine Clerkship due to his professionalism.[3] (*Id.* at 2.) During the hearing, the Committee reviewed (1) a written summary of Clark's academic performance; (2) materials submitted by Dr. Olivia Mittel, Assistant Dean of the School of Medicine; and (3) materials submitted by Clark himself. (*Id.*)

The Recommendation prepared by the Committee reflects that not only was Clark given the opportunity to submit materials to the Committee, he was also given the opportunity to speak with them. (*Id.*) In fact, Clark was even "given the opportunity to introduce the situation and what led to him being included in this meeting." (*Id.*) Clark availed himself of the opportunity to be heard by making his arguments to the Committee. (*Id.*) Despite Clark's willingness to place blame on the University, he accepted no responsibility for his actions, such as violating the professionalism contract, instead making general statements, such as "humans are always imperfect and that the answer to whether he could have done better would always be yes." (*Id.*)

After considering Clark's remarks at the meeting, a motion was made and seconded that Clark be dismissed from the School of Medicine on the grounds that Clark "is not safe to continue with patient interaction, physician-to-physician interaction, team interaction." (*Id.* at 2-3.) The Committee voted 15-1 in favor of dismissal. (*Id.* at 3.) Anthony Simms, the Director of Medical Student Affairs & Student Wellness, and a non-voting member of the Committee, prepared the written recommendation for dismissal. (*See generally id.*) The Recommendation noted, "Austin

---

[3] Failing grades result in students going before the Committee, who recommends a course of action to the Dean.

has already been granted several chances to correct behavior, including the professionalism contract, but these have reoccurred with, what it appears, little insight from Austin to change or adapt to being a physician." (*Id.* at 3.)

Dean of the School of Medicine, Dr. Toni Ganzel, adopted the Recommendation of the Student Promotions Committee and later officially notified Clark and his counsel, Tim Denison and Martha Eckert, of the decision via letter on July 27, 2020. (*See* Official Notice, Exh. 1.) Dr. Ganzel further discussed the Recommendation with Clark and his counsel, Martha Eckert, during a virtual meeting on July 15, 2020, before Dr. Ganzel made her final decision, giving Clark another opportunity to change Dr. Ganzel's mind. (*Id.*) Dr. Ganzel also requested and reviewed additional information from Clark and the Office of Student Affairs. (*Id.*) In addition, Clark and Dr. Ganzel "engaged in several virtual meeting discussions and email communications following [Dr. Ganzel's] request [for additional information]." (*Id.*) Clark was provided the opportunity to review and respond to the additional information submitted by the Office of Student Affairs. (*Id.*) In the Official Notice, Dr. Ganzel told Clark that in accordance with the grievance procedures set forth in Chapter 6, Section 6.8 of The Redbook, Clark could request a review of the decision. (*Id.*) Ultimately, Dr. Ganzel confirmed her decision to adopt the Committee's Recommendation dismissing Clark from the School of Medicine.

## PROCEDURAL HISTORY

On July 23, 2021, Clark filed this lawsuit against the University of Louisville and fourteen individual defendants, alleging four causes of action pursuant to 42 U.S.C. § 1983 in his verified original Complaint: (1) Violation of Plaintiff's First Amendment Right to Freedom of Speech Retaliation; (2) Violation of Plaintiff's First Amendment Right to Freedom of Speech Content & Viewpoint Discrimination; (3) Violation of Plaintiff's Fourteenth Amendment Right to Procedural

Due Process of Law; and (4) Violation of Plaintiff's Fourteenth Amendment Right to Equal Protection of the Law. (DN 1.) On August 10, 2021, Clark filed his Amended Complaint, adding additional allegations. (DN 4.) Clark also attempted to plead an additional cause of action, Violation of Plaintiff's Fourteenth Amendment Right to Substantive Due Process of Law, in his Amended Complaint, though the statute of limitations on § 1983 claims had run, at the latest, on July 27, 2021. (*See* DN 4.)[4]

The Clerk of Court notified Clark's counsel of deficiencies pertaining to the Amended Complaint on August 18, 2021. (*See* Order, DN 5.) Because Clark failed to serve any of the Defendants with either the original Complaint or the Amended Complaint within the ninety (90) day period required by Federal Rule of Civil Procedure 4(m), the Court issued an order to show cause on October 27, 2021. (DN 5.) On November 9, 2021, Clark responded by accusing Defendants of evading service and filing a Motion for Enlargement of Time. (DN 6, 7.) In reality, Clark's failure to serve Defendants was due to his own lack of diligence, as evidenced by the incorrect addresses he put on the summons. (*See* DN 3.) Clark subsequently served Defendants Bendapudi, Gonzalez, Ganzel, Mittel, and Shaw on November 19, 2021.

## STANDARD OF REVIEW

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FRCP 8(a)(2). Each claim in an Amended Complaint must present "some viable legal theory" for relief. *Left Fork Mining Co. v. Hooker*, 775 F.3d 768, 773 (6th Cir. 2014). The United States Supreme Court has made clear that a failure to plead "enough facts to state a

---

[4] The Amended Complaint purports to be both verified and submitted not on August 10, 2021, but on July 23, 2021, the date the *original* Complaint was filed. (*See* DN 4, at 34-35; DN 1.) It is unclear whether the Amended Complaint contains an erroneous date or was not actually verified, but it is clear it was not submitted to the Court on July 23, 2021, but rather on August 10, 2021. (*See* DN 4 filestamp.)

claim to relief that is plausible on its face" warrants dismissal of the claim. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Moreover, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation," and it does not "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 678-79. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557). A complaint whose "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct" does not satisfy the pleading requirements of Rule 8 and will not withstand a motion to dismiss. *Id.* at 679.

Clark's Amended Complaint does not present viable legal theories under the facts he alleged. Further, it does not "contain sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

## SCOPE OF REVIEW BEYOND THE FACE OF THE COMPLAINT

In "deciding a motion to dismiss and/or a motion for judgment on the pleadings under Rule 12," the Sixth Circuit has held that a Court is allowed to consider matters outside the pleadings without converting the motion into a motion for summary judgment under Rule 56 under "a number of exceptions to [the general] rule." *Carney v. Univ. of Akron*, No. 5:15cv2309, 2016 U.S. Dist. LEXIS 98712, at *17-19 (N.D. Ohio July 28, 2016) (citing *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) & *Commercial Money Ctr., Inc. v. Illinois Union Ins.*

*Co.*, 508 F.3d 327, 335 (6th Cir. 2007)). A district court may consider "the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Basset*, 528 F.3d at 430. A Court may also "consider documents that govern a party's rights and are necessarily incorporated by reference in the complaint on a motion to dismiss." *Carney*, 2016 U.S. Dist. LEXIS 98712, at *18 (interpreting *Commercial Money Ctr., Inc.*, 508 F.3d at 335).

"A plaintiff is under no obligation to attach to his complaint documents upon which his action is based," but a defendant may then "introduce certain pertinent documents if the plaintiff fails to do so." *Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 89 (6th Cir. 1997) (collecting cases) (citations omitted). "Otherwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document upon which it relied." *Id.* (citation omitted). Thus, "documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *Id.* (expressly adopting the holding of *Venture Assoc. v. Zenith Data Sys.*, 987 F.2d 429, 431 (7th Cir. 1993)); *see also Basset*, 528 F.3d at 430.

The Court should also consider the rule that "when a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations." *Cates v. Crystal Clear Techs., LLC*, 874 F.3d 530, 536 (6th Cir. 2017). "Nor is the Court required to accept as true complaint allegations that are contradicted by public records and other evidentiary materials of which the Court may take judicial notice." *Carney*, 2016 U.S. Dist. LEXIS 98712, at *15-16 (citing *Moody v. CitiMortgage, Inc.*, 32 F.Supp.3d 869, 874-75 (W.D. Mich. 2014) & *Williams v.*

*CitiMortgage, Inc.*, 498 F. App'x 532, 536 (6th Cir. 2012)) (internal citations and quotations omitted).

Here, the Amended Complaint discusses the steps that led to Clark's dismissal from the University in detail. (*See, e.g.,* Am. Compl., ¶¶ 60-72 (detailing "Dismissal Proceedings").) The documents concerning the dismissal are integral to all of Clark's claims and should therefore be considered at the pleadings stage. *See, e.g., Carney*, 2016 U.S. Dist. LEXIS 98712, at *17-20 (considering similar materials attached to university defendants' Rule 12(c) motion, including a letter to plaintiff notifying her of a disciplinary hearing, a letter outlining the findings from the Committee's hearing, a letter appealing the Committee's decision, a letter announcing the decision on appeal, and a copy of the Disciplinary Code, without converting to a motion for summary judgment, since the materials were central to plaintiff's procedural due process claims concerning her expulsion from the University of Akron's law school).

## ARGUMENT

**I.** **The University of Louisville and Defendants Acting In Their Official Capacity Are Entitled to Eleventh Amendment Sovereign Immunity.**

The University and officials acting in their official capacity are entitled to Eleventh Amendment immunity. Accordingly, all such claims should be dismissed. While it is clear from Sixth Circuit precedent that *all* claims against the individuals in their official capacities should be dismissed, it is incontrovertible that at a minimum, the Court must dismiss all claims for monetary damages or declaratory relief.

All of Clark's § 1983 claims against the University are clearly barred by sovereign immunity. "The University of Louisville is a state agency cloaked with Eleventh Amendment immunity." *Kaplan v. Univ. of Louisville*, 10 F.4th 569, 576 (6th Cir. 2021) ("*Kaplan*") (affirming the district

court's grant of sovereign immunity to the University of Louisville as to former professor's procedural due process claims).

There are two possible paths around a State's sovereign immunity. "First, Congress may authorize such a suit in the exercise of its power to enforce the Fourteenth Amendment." *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 670 (1999). "Second, a State may waive its sovereign immunity by consenting to suit." *Id.* "A State's consent to suit must be unequivocally expressed in the text of [a] relevant statute." *Sossamon v. Texas*, 563 U.S. 277, 284 (2011) (internal quotation marks omitted). "First, Kentucky has not waived its sovereign immunity for § 1983 claims," and "Second, Congress did not abrogate Kentucky's sovereign immunity for § 1983 claims." *Kaplan v. University of Louisville*, No. 3:19-CV-825-CRS, 2020 U.S. Dist. LEXIS 131325 at *13, 2020 WL 4275042 (W.D. Ky. July 23, 2020), aff'd, by *Kaplan v. University of Louisville*, 10 F.4th 569 (6th Cir. 2021).

The only other exception is the *Ex Parte Young* doctrine, which "allows plaintiffs to bring a suit challenging the constitutionality of a state official's action." *Kaplan*, 10 F.4th at 577 (citations omitted). While Clark may argue the *Ex Parte Young* doctrine should apply here, the Sixth Circuit has rejected a similar effort by a University professor to "shoehorn his claims into the *Ex parte Young* doctrine," an effort that failed with respect to the University and did not apply to individuals sued in their personal capacities. *Id.* The Sixth Circuit did not need to address the official capacity claims in that case, as it found no constitutional violations. *See id.* However, in the underlying District Court case, the Western District of Kentucky explained that to fall within *Ex Parte Young*, the claim must be "brought against state officials in their official capacity" and "seek prospective relief to end a continuing violation of federal law." *Kaplan v. University of Louisville*, 2020 U.S. Dist. LEXIS 131325 at *13. Where a professor was banned from campus and terminated from his employment

with the University, this Court found the Eleventh Amendment barred his suit, stating, "Whatever remedy [the plaintiff] is seeking for these alleged injuries would necessarily be righting an alleged past wrong, the proper remedy for which would be damages, not injunctive relief." *Id.* at *14.

Because the claims against the University and the individual defendants in their official capacities are barred by the doctrine of sovereign immunity, the Court should dismiss all the claims against the University and all the claims brought against the individual defendants in their official capacities.

## II. The Individual Defendants Are Entitled to Qualified Immunity.

The individual defendants, including the Served Defendants, are entitled to qualified immunity. Qualified immunity serves to "shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009); *see also Yoder v. Univ. of Louisville*, 526 F. App'x 537, 544 (6th Cir. 2013). "Because qualified immunity is an immunity from suit rather than a mere defense to liability, it is effectively lost if a case is erroneously permitted to go to trial. Indeed, we have made clear that the 'driving force' behind creation of the qualified immunity doctrine was a desire to **ensure that 'insubstantial claims' against government officials will be resolved prior to discovery**. Accordingly, we repeatedly have stressed the **importance of resolving immunity questions at the earliest possible stage in litigation.**" *Pearson*, 555 U.S. at 231-32 (cleaned up) (emphasis added). Thus, where possible, the Court should determine the qualified immunity inquiry at the motion to dismiss stage, prior to the individual defendants being require to respond to written discovery requests and having their depositions taken, both of which can take up a significant amount of time and distract the officials from their official duties.

The United States Supreme Court has elucidated a two prong test to determine whether an official is entitled to qualified immunity. *See Pearson*, 555 U.S. at 232. In the context of evaluating qualified immunity at the motion to dismiss stage, "First, a court must decide whether the facts that a plaintiff has alleged…make out a violation of a constitutional right.  Second, …the court must decide whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Pearson*, 555 U.S. at 232.; *see also Stanley v. City of Norton*, 124 F. App'x 305, 309 (6th Cir. 2005); *Higgason v. Stephens*, 288 F.3d 868, 876 (6th Cir. 2002).[5]

The Supreme Court has determined that federal courts have the discretion to decide which of the two prongs should be addressed first in light of the circumstances in the particular case at hand. *See Pearson*, 555 U.S. at 236. The "rigid order of battle," which required the first prong be decided first, previously required by the Court in *Saucier v. Katz*, 533 U.S. 194 (2001) was heavily criticized before it was overruled in *Pearson* eight years later. *See Pearson*, 555 U.S. at 234-235 (collecting cases and other legal sources). As recognized by the critics, including multiple federal courts and even Supreme Court concurring and dissenting opinions during the time period where the order of battle in *Saucier* remained precedential, it often makes sense to *first* consider whether a constitutional right is sufficiently clearly established, **before** undertaking a full-blown constitutional analysis. This is even more evident when considering the policies behind qualified immunity. "Qualified immunity is an **immunity from suit** rather than a mere defense to liability. Saucier's two-step protocol disserves the purpose of qualified immunity when it **forces the parties to endure**

---

[5] There is an optional third prong of the test, which may be helpful to provide additional insight into the analysis. *See Stanley*, 124 F. App'x at 309. "[T]hird, plaintiff must allege sufficient facts and support such allegations by sufficient evidence to indicate that what the official allegedly did was objectively unreasonable in light of clearly established rights." *Id.* With regard to the third prong, at the motion to dismiss stage, Plaintiff is not yet required to support the allegations by sufficient evidence, but must still allege sufficient facts to indicate what the official allegedly did was objectively unreasonable in light of clearly established rights.

**additional burdens of suit**—such as the costs of litigating constitutional questions and delays attributable to resolving them—when the suit otherwise could be disposed of more readily." *Pearson*, 555 U.S. at 237 (citations omitted) (emphasis added).

The Supreme Court has recognized that deciding the constitutional question first may sometimes result in "[u]nnecessary litigation of constitutional issues" that "wastes the parties' resources." *Pearson*, 555 U.S. at 237. In addition, it is the nature of our judicial system that Courts must devote invaluable time on busy dockets to act as discovery referees, hold conferences, and resolve what often turn out to be multiple dispositive motions for any given case, including reviewing hundreds of pages of briefing, hearing oral argument, and drafting complex opinions, all the while risking being outpaced by a higher court's decision rendering their forthcoming ruling moot, or worse, immediately overruling it. It is unsurprising that the Supreme Court has recognized this negative effect on the court system in addition to the negative effect on government defendants, noting that in some cases, deciding the constitutional question first may result in "a substantial expenditure of scarce judicial resources on difficult questions that have no effect on the outcome of the case." *Id.* at 236-37. This is particularly so for cases where "it is plain that a constitutional right is not clearly established but far from obvious whether in fact there is such a right." *Id.* Thus, the doctrine of qualified immunity shields not only government defendants, but also the courts, from spending valuable government time on thorny constitutional issues where a *constitutional right is not even clearly established*.

Finally, "principles of judicial restraint caution us to **avoid reaching constitutional questions** when they are unnecessary to the disposition of a case." *Id.* at 234 (citing *Higazy v. Templeton*, 505 F.3d 161, 179, n. 19 (2d Cir. 2007)) (emphasis added); *see Higazy*, 505 F.3d at 179

14

(deciding not to consider the constitutional question where no court had held that a material witness had the right to counsel before charges were filed).

   While Defendants contend there were no constitutional violations in this case, should the Court disagree, it is clear, without delving into the full analysis of whether a violation took place, that any constitutional violations are not clearly established. Thus, the Court should note when reviewing the analysis of Clark's claims below, that it is *not required* to come to a conclusion regarding the constitutional analysis; rather it may choose to only examine the analysis insofar as it is necessary to determine whether any alleged right was clearly established.

   For a right to be clearly established, "the right the official is alleged to have violated must have been clearly established" not in the sense of a "general proposition," but rather "in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Saucier*, 533 U.S. at 202 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).) If government officials "of reasonable competence could disagree" on the lawfulness of the action, the defendants are entitled to immunity. *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Thus, "the relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be **clear to a reasonable official** that his conduct was unlawful **in the situation he confronted**." *Yoder*, 526 F. App'x at 544-45 (citing *Saucier*, 533 U.S. at 202) (internal citations omitted) (emphasis added); *see also Goodwin v. City of Painesville*, 781 F.3d 314, 325 (6th Cir. 2015).[6]

   None of the alleged constitutional rights were clearly established as applied to the particular facts and circumstances at issue in this case; it would not have been apparent to a reasonable person

---

[6] Once a defendant raises the defense of qualified immunity, the plaintiff bears the burden of overcoming it and establishing that the defendant is not entitled to qualified immunity. *See Johnson v. Moseley*, 790 F.3d 649, 653 (6th Cir. 2015).

at the time the alleged violations were made that any defendant was violating Clark's constitutional rights. Here, with respect to the individual situations at issue, there is no *controlling authority* supporting Clark's position that his rights were violated or give rise to a § 1983 claim. This Court should therefore "find dispositive the absence of controlling authority that specifically prohibits Defendants' conduct." *Yoder*, 526 F. App'x at 545 (citations omitted).

Clark's First Amendment rights in these particular circumstances are not clearly established. As in *Yoder*, Clark must rely on cases governing student speech standards, none of which consider the unique circumstances posed here. In *Yoder*, the Court was required to determine whether a University could "take action against a nursing (or medical) student for making comments off campus that implicate patient privacy concerns," where "Defendants have legal and ethical obligations to ensure that patient confidentiality is protected, and that nursing students are trained with regard to their ethical obligations." Because there was no authority directly on point, the Court determined that that the defendants had acted reasonably in balancing the student's rights against those of the University and its patients, as the Court should do in this case. "Under such circumstances, Defendants could not fairly be said to know that the law forbids discharging a student under these circumstances." *Yoder*, 526 F. App'x at 545-46. Nor could Defendants here be fairly said to know that the law forbids discharging a student for failing a clerkship and concerns with conduct and professionalism in a clinical setting, particularly considering how the concerns of the student, who is already treating patients as part of his education, must be balanced against those of the patients in obtaining quality care.[7]

---

[7] The University must also take into account the academic freedom of faculty members. The Sixth Circuit has recognized that, in the assignment of grades, a professor "should remain free to decide, according to her own professional judgment, what grades to assign and what grades not to assign." *See Parate v. Isibor*, 868 F.2d 821, 828 (6th Cir. 1989). It is similarly unclear that the University should take it upon itself to countermand the professional judgment of the Committee, made-up of clinicians and professors, as well as two medical students.

Nor are Clark's 14th Amendment rights clearly established in this context. With respect to the procedural due process claim, "whether a student's interest in continued enrollment at a post-secondary institution is protected by procedural due process has not been resolved." *McGee v. Schoolcraft Cmty. Coll.*, 167 F. App'x 429, 437 (6th Cir. 2006). Likewise, the "contours" of the right to any particular procedures in a university disciplinary proceeding are not clearly established. *Lee v. Univ. of Mich.-Dearborn*, 2007 U.S. Dist. LEXIS 72236, *24-25 (W.D. Mich. Sep. 27, 2007). Courts have therefore held that school administrators are protected by qualified immunity because, whatever the contours of those rights, the case law does not support an "expectation of a certain type of due process itself." *Id.* As a matter of law, the individual defendants did not violate Clark's clearly established constitutional rights. However, even if Clark had stated a plausible claim that his procedural due process rights were violated, Defendants are entitled to qualified immunity from suit in their personal capacities.

Because the individual defendants are entitled to qualified immunity in their individual capacities, the Court should dismiss all the claims against the individual defendants. When considered in combination with the dismissal of claims against the University and claims brought against individual defendants in their official capacities, it is clear the Court should dismiss **all** claims against all parties based on sovereign and qualified immunity grounds.

## III.   Clark Fails to Allege *Any* Relevant Conduct By Dr. Bendapudi and Dr. Gonzalez.

Clark has attempted extend his claims to officials outside the School of Medicine with no involvement in the relevant events, including University President Dr. Neeli Bendapudi and University Provost Dr. Lori Gonzalez. The Amended Complaint fails to state a valid claim against Dr. Bendapudi and Dr. Gonzalez, because Clark fails to allege any particular facts that could result

in either individual's liability, warranting the dismissal of Dr. Bendapudi and Dr. Gonzalez in both their individual and official capacities.

Aside from alleging that Dr. Bendapudi is the University President with that office's attendant responsibilities (Am. Compl., ¶¶ 16-19) and Dr. Gonzalez is the University Provost with that office's attendant responsibilities (Am. Compl., ¶¶ 20-21), the Amended Complaint only makes conclusory statements regarding the two Defendants, grouping them together such that they are both alleged to have done the exact same thing. The Amended Complaint alleges that Dr. Bendapudi and Dr. Gonzalez were aware of the "retaliatory and unconstitutional actions taken against Clark" and did nothing to "change or reverse" those actions. (Am. Compl., ¶ 22.) Further, Dr. Bendapudi and Dr. Gonzalez "have the authority to review, approve, or reject the decisions of other University officials, including the other Defendants." (Am. Compl., ¶ 23.) Dr. Bendapudi and Dr. Gonzalez, "either by action or neglect," have "ratified the retaliatory and unconstitutional decisions regarding Clark that are challenged herein." (Am. Compl., ¶ 24.)

The Court cannot infer any liability based on these overbroad, essentially meaningless statements. The Amended Complaint does not specify what information it alleges either Dr. Bendapudi or Dr. Gonzalez knew, does not state what the "retaliatory and unconstitutional acts taken against Clark" are in this context, does not state whether Dr. Bendapudi or Dr. Gonzalez *did* "review, approve, or reject" the decisions, and even goes so far as to make its last allegation regarding the two Defendants in the alternative, as literally an "either…or" proposition. (Am. Compl., ¶ 24.) The Court should dismiss the claims against Dr. Bendapudi and Dr. Gonzalez for failure to state a claim.

This is a classic example of a failure to plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Any "legal conclusions" provided by Clark do not have to be accepted as true. *Iqbal*, 556 U.S. at 678. The allegations against Dr. Bendapudi and Dr.

Gonzalez are the "unadorned, the-defendant-unlawfully-harmed-me accusation" Rule 8 prohibits, insufficient to "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 678-79.

In addition, the doctrine of *respondeat superior* does not apply in § 1983 actions to impute liability to supervisors. *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Taylor v. Mich. Dep't of Corr.*, 69 F.3d 76, 80-81 (6th Cir. 1995). Therefore none of the individual defendants, including Dr. Bendapudi and Dr. Gonzalez, are responsible for the actions of the *other* Defendants. Furthermore, "[s]upervisory liability under § 1983 cannot attach where the allegation of liability is based upon a mere failure to act." *Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1999). "Rather, the supervisors must have actively engaged in unconstitutional behavior. Therefore, liability must lie upon more than a mere right to control employees and cannot rely on simple negligence." *Gregory v. City of Louisville*, 444 F.3d 725, 751-52 (6th Cir. 2006) (internal citations omitted). Thus Clark's claims that Dr. Bendapudi and Dr. Gonzalez are responsible due to their "neglect" or failure to act fail as a matter of law. (*See* Am. Compl., ¶¶ 22-24.)

## IV. Clark Fails to State a Claim That His First Amendment Rights Were Violated.

Clark's allegations do not establish a violation of his First Amendment rights. Broadly speaking, First Amendment retaliation claims involve a three-prong analysis: (1) whether the individual engaged in speech protected by the First Amendment; (2) whether there was an adverse action by the defendant that would chill an ordinary person from exercising their First Amendment rights; and (3) whether the speech was a substantial or motivating factor in the adverse action. *Taylor v. Keith*, 338 F.3d 639, 643 (6th Cir. 2003). Clark fails to allege a sufficient causal connection between his protected speech and beliefs and the decision made regarding his dismissal to show the speech was a substantial or motivating factor in his dismissal. His inappropriate conclusory

allegations are based on nothing other than the fact that he had beliefs he made public and other individuals on campus publicly disagreed with those beliefs. (*See, e.g.,* Am. Compl., ¶ 95 (alleging that Defendants, presumably all fifteen of them, "evaluated the content and viewpoint" of Clark's speech to "determine whether they would and could take any adverse academic actions against him or otherwise punish him based on what he said.").) Clark's allegations fail to set forth factual allegations that would support his speculation under *Twombley* and *Iqbal.* For example, Clark does not even make allegations about the individual defendants' personal beliefs; we are presumably meant to assume they disagree with Clark. However, his dismissal was recommended by the Student Promotions Committee after a hearing, and none of the Committee members are named in the Amended Complaint. The amount of information he provided to the Committee and Dr. Ganzel illustrate that the Committee had an ample record on which to base its recommendation. Clark fails to allege facts sufficient to show that the Committee and/or Dr. Ganzel based the Recommendation and decision to dismiss him from the School of Medicine on his statements made during his second year of practice, or any other protected speech. Accordingly, Clark's First Amendment claims fail as a matter of law.

## V.      Clark Fails to State a Claim That He Was Deprived of His Due Process Rights.

To state a valid procedural due process claim, Clark is required to (1) identify a legitimate property or liberty interest and then show (2) deprivation of that interest (3) without adequate pre-deprivation procedural rights. *Cahoo v. SAS Analytics Inc.*, 912 F.3d 887, 900 (6th Cir. 2019) ("three elements" of procedural due process); Erwin Chemerinsky, Symposium, *Procedural Due Process Claims*, 16 Touro L. Rev. 871, 871 (2000) ("three sub-issues" of procedural due process); *see also Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 572–73 (1972); *Flaim v. Med. College of Ohio*, 418 F.3d 629, 634 (6th Cir. 2005). None of Clark's claims meet these requirements.

20

Clark has no protected property or liberty interest. In describing his cause of action for procedural due process, Clark asserts that the United States Constitution requires "far less stringent procedural due process requirements for an academic dismissal when compared to a non-academic dismissal." (Am. Compl., ¶ 101.) However, Clark fails to identify either a property or liberty interest that would entitle him to such procedural due process. The Sixth Circuit has stated that "whether a student's interest in continued enrollment at a post-secondary institution is protected by procedural due process has not been resolved." *McGee*, 167 F. App'x at 437.  Because of the lack of authority recognizing a student's interest in continued enrollment at a post-secondary institution as a protected property interest, courts have declined to recognize such an interest. *See Dibbern v. Univ. of Mich.*, 2016 U.S. Dist. LEXIS 65129, *75-77 (E.D. Mich. May 18, 2016). This Court should do the same, and dismiss Clark's procedural due process claim against all Defendants.[8]

Even assuming *arguendo* that Clark had a protected property or liberty interest, the Complaint fails to state a plausible procedural due process claim, as its allegations detail a University procedure that far exceeded any required procedures. "[T]here are two basic due process requirements: (1) notice, and (2) an opportunity to be heard." *Flaim*, 418 F.3d at 634; *see also Crosby v. Univ. of Ky.*, 863 F.3d 545, 555 (6th Cir. 2017) ("[N]otice and an opportunity to be heard are essential."). "Due process is a flexible concept that varies according to the situation. The adequacy of the procedures employed in a given case depends on . . . the nature of the private interest, the efficacy of additional procedures, and the government's interests." *Sharp v. Lindsey*, 285 F.3d 479, 488 (6th Cir. 2002) (cleaned up).

---

[8] It is clear from *McGee* and *Dibern* that there is no clearly established property interest here, and thus the Court need not complete its constitutional analysis.

Here, Clark *admits* he was given "notice and [an] opportunity to be heard," but claims the notice and opportunity are inadequate, because the faculty and leadership of the School of Medicine allegedly "did not conduct academic disciplinary procedures in a careful and deliberate manner." (Am. Compl., ¶ 102.) Clark then makes conclusory statements that Defendants failed to adhere to University policy and the faculty Code of Conduct, failed to adequately consider alternative methods of discipline, misrepresented or "at worst falsif[ied] the official transcription," not affording Clark access to documents, violating Clark's FERPA rights, and obstructing Clark's attempt at a formal University grievance to overturn his academic dismissal. (Am. Compl., ¶ 102.) These statements are not *facts*; they are conclusions. Which faculty members did not adhere to University policy, and in what way? Which faculty members did not adequately consider alternative methods of discipline? Who is Clark accusing of falsifying the official transcription? How were Clark's FERPA rights violated, and how does that affect his due process claims? It is no answer for Clark to refer the Court to "reasonable inference." (*See* Am. Compl., ¶ 103.)

While Clark does not agree with *the result* of the *extensive* proceedings, he was given all that is required—notice and an opportunity to be heard before an impartial factfinder. In this case, Clark participated in a hearing before the Student Promotions Committee. Sixteen members of the Committee, none of whom are named in the Amended Complaint, and one of whom disapproved of dismissing him from the University, were responsible for the decision. Dr. Ganzel provided Clark with additional opportunities to be heard. Even after Dr. Ganzel finally approved the Committee's recommendation to dismiss him, Clark was given the opportunity to appeal that decision, which is more than is required.

With regard to his substantive due process claim, Clark is precluded from making that claim, as the statute of limitations expired prior to his allegation of that cause of action in his Amended

Complaint. § 1983 claims are subject to a one-year statute of limitations. *Bonner v. Perry*, 564 F.3d 424, 430-31 (6th Cir. 2009). Clark was dismissed from the School of Medicine on May 29, 2020, and did not file his Complaint until July 23, 2021. (*See* DN 1 filestamp; Am. Compl., ¶ 71.)

## VI.   Clark Fails to State an Equal Protection Claim.

Clark alleges that he was punished for expressing his views, whereas "there are students who, when expressing contrary views or faiths (or lack thereof)" are not subject to the same punishment as Clark, denying him equal protection of the law. (Am. Compl., ¶¶ 111-125.) Clark sets forth a litany of events that Defendants allegedly inflicted on him for his views, claiming that no other students were subject to similar treatment. (*Id.*)

Clark fails to plead a viable equal protection claim through these allegations. "The threshold element of an equal protection claim is disparate treatment; once disparate treatment is shown, the equal protection analysis is determined by the classification used by government decision-makers." *Scarbrough v. Morgan County Board of Education*, 470 F.3d 250, 260 (6th Cir. 2006). A determination that Clark's speech was not protected under the First Amendment would therefore lead to the same result with regard to Clark's claim his right to equal protection under the law was violated. *See Dixon v. University of Toledo*, 702 F.3d 269, 279 (6th Cir. 2012) (recognizing that a failure to establish speech protected by the First Amendment causes a failure of the related equal protection claim). Nor has Clark identified any other individual he alleges is similarly situated to him, which is required for his equal protection claim. *Dixon v. University of Toledo*, 702 F.3d at 278-80.

## CONCLUSION

Because all Defendants are entitled to sovereign and qualified immunity, and because Clark has failed to state a claim upon which relief can be granted, the Served Defendants respectfully

request that the Court enter their tendered Order dismissing this matter with prejudice as a matter of law.

Respectfully submitted,

/s/ Sarah Abshear
Donna King Perry
Sarah Abshear
Dinsmore & Shohl LLP
101 South Fifth Street, Suite 2500
Louisville, KY 40202
(502) 540-2300
(502) 585-2207 (Fax)
donna.perry@dinsmore.com
sarah.abshear@dinsmore.com

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing was served via the Court's electronic case management system (CM/ECF) on this 9th day of December, 2021, upon the following:

Timothy Denison
235 South Fifth Street
Louisville, KY 40202
(502) 589-6916
Timothydenison1965@gmail.com

Robert Frederick Smith
9219 U.S. Highway 42
Prospect, KY 40059
(502) 592-3407
rfcsmith@me.com

*Counsel for Plaintiff*

/s/Sarah Abshear
*Counsel for Defendants*

24