UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

*(Electronically Filed)*

AUSTIN CLARK, )
)
    Plaintiff )
)     Civil Action No. 3:21-CV-480-DJH
v. )
)
UNIVERSITY OF LOUISVILLE, et al., )
)
)
)
    Defendants )

## DEFENDANTS JENNIFER KOCH, WILLIAM CRUMP, MOHAN RAO, AND THOMAS NEELY'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

Defendants Jennifer Koch, William Crump, Mohan Rao, and Thomas Neely, in their individual and official capacities,[1] by counsel, move to dismiss Plaintiff Austin Clark's Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[2]

### INTRODUCTION

Austin Clark brought this lawsuit after he was dismissed from the University of Louisville School of Medicine for failing his Internal Medicine clerkship and exhibiting extremely unprofessional conduct in the clinical setting towards patients, faculty, and students. He brought this lawsuit alleging

---

[1] For ease of reference, the other individual defendants, all sued in both their individual and official capacities, are Drs. Neeli Bendapudi, Lori Gonzalez, Toni Ganzel, Olivia Mittel, and Monica Shaw, who have a pending Motion to Dismiss before the Court (DN 9), as well as Drs. Julianna Brown, Cristina Giles, Jon Alexander, Sara Petruska, and Samuel Reynolds. Upon information and belief, Plaintiff has not served the University of Louisville or Drs. Brown, Giles, Alexander, Petruska, or Reynolds.

[2] This Motion to Dismiss ("Second Motion to Dismiss") is based largely on the same legal principles as the earlier Motion to Dismiss filed by the earlier-served Defendants (DN 9).

that he was dismissed because of his traditional Christian and conservative beliefs, and because his instructors issued negative evaluations of Clark purportedly as retaliation for his beliefs.

During his tenure as a student at the University of Louisville School of Medicine, Clark's instructors issued several evaluations of Clark with negative feedback or constructive criticism. Instead of utilizing this feedback from his instructors, Clark's focus remained on proving that each negative thing said about him was wrong, false, or based on a misunderstanding of Clark. Coupled with his demonstrated inability to productively respond to feedback, several instructors independently identified concerns about Clark continuing in medical school and, eventually, the practice of medicine. Clark continued challenging each negative evaluation he received and had numerous meetings with various University of Louisville School of Medicine faculty, the majority of whom explicitly told Clark that they were providing him with feedback because their goal was to see him succeed. Ultimately, however, after Clark received a failing grade in his internal medicine clerkship, Clark had a hearing before the Student Promotions Committee (the "Committee" or "SPC") to discuss his shortcomings as a medical student, and the hearing resulted in a Committee recommendation that Clark be dismissed from the University of Louisville School of Medicine. Clark appealed this recommendation – and even presented additional evidence for his appeal – before the Dean ultimately upheld the recommendation. Clark brought this lawsuit alleging that, instead of his well-documented deficiencies as a medical student, he was *really* dismissed due to his conservative views, his Christian beliefs, and his complaints about instructors' conduct.

Clark's Amended Complaint should be dismissed with prejudice as a matter of law, because Clark's claims against Defendants Koch, Crump, Rao, and Neely are barred by the statute of limitations. Further, Clark's claims fail because the Defendants are entitled to sovereign immunity for their actions. Finally, Clark fails to state a claim for which relief can be granted. Clark's claims are legally and factually deficient and must be dismissed.

3

## ALLEGED FACTS

Clark's Amended Complaint makes a number of unsupported conclusions and offers his opinions and his admitted beliefs about various events but is light on actual facts. The facts relevant to this Motion,[3] however, are accepted as true at this stage and reviewed herein.

Clark was admitted to the University of Louisville School of Medicine as a medical student in 2017. (DN 4, p. 41). This involved educational components at both the Jackson Street (Louisville) Campus and the Trover Campus in Madisonville, Kentucky. (*Id.* at 41-42). Clark began his third year of medical school in the summer of 2019 with instruction at the Trover Campus. (*Id.* at 49). In August 2019, Clark had a disagreement with a Trover Campus instructor, Defendant Thomas Neely ("Neely"), wherein Clark stated that Neely was the worst instructor Clark ever had, and Neely allegedly called Clark "'stupid' and other untrue and derogatory terms[.]" (*Id.*). As a result of this disagreement, Clark alleges that Neely reported Clark's behavior to Defendant Mohan Rao ("Rao"). (*Id.* at 50). According to Clark, Rao is the Program Director of Surgery at the Trover Campus, and Clark and Rao have never met. (*Id.* at 45). Nonetheless, Clark alleges that Neely and Rao reported Clark's conduct to Defendant William Crump ("Crump"), an "Assistant Dean and the Operating Dean at the Trover Campus[.]" (*Id.* at 50; 43). Next, Clark alleges that Crump instructed Clark on appropriate behavior to address senior faculty members. (*Id.*). Clark alleges that after their disagreement, Neely refused to meet with Clark in his office, and instead, spoke through a doorway to Clark. (*Id.*).

Within one week of Clark's disagreement with Neely, Rao sent a letter to Crump stating that the Trover Campus faculty refused to accept Clark as a student at the Trover Campus. (*Id.*). The next day, on August 15, 2019, Crump sent a letter to Clark stating that it was "not 'in [Clark's] best interest . . . to return to the Trover Campus[.]'" (*Id.*). Clark's exclusion from the Trover Campus did not end

---

[3] As this Motion is brought only by Defendants Jennifer Koch, William Crump, Mohan Rao, and Thomas Neely, only the facts and allegations relevant to these Defendants are reviewed herein.

his academic career as a medical student and Clark does not allege that it permanently damaged his academic prospects. (*See id.*).

After he returned to the Jackson Street Campus in Louisville, Clark was allegedly required to sign a "Professionalism Contract;" he does not allege that Crump, Rao, or Neely participated in the drafting or execution of this contract. (*Id.* at 51). Clark does not allege that Crump, Rao, or Neely discussed Clark's issues with anyone at the Jackson Street Campus, nor does he allege that anyone at the Jackson Street Campus had *knowledge* of his issues at the Trover Campus. (*Id.*). Nonetheless, Clark returned to the Jackson Street Campus where his academic issues persisted and he continued to engage in disagreements with his instructors.[4] Beyond these events in August 2019, Clark does not allege that Crump, Rao, or Neely had *any* involvement in his academic career or the ultimate decision to dismiss him as a medical student.

In February 2020, while at the Jackson Street Campus, Clark continued to have academic issues, this time arising out of a *different* instructor's criticisms of Clark. (*Id.* at 52). As a result of these issues, Clark filed a "mistreatment complaint" with various Defendants, including Dr. Jennifer Koch ("Koch"), on February 11, 2020. (*Id.* at 52-53). Clark does not specify what this complaint contained, but generally alleges that it reported harassment and bullying by his instructor. (*Id.* at 52-53). Clark does not allege who reviewed his complaint, what the outcome of it was, or whether it had any effect on his subsequent issues while in medical school. (*See id.*). Clark does not allege that Koch had any decision-making power with respect to his mistreatment complaint; he merely alleges that she *received* his complaint. (*Id.*). He similarly does not allege that Koch had any involvement in his subsequent issues or the ultimate decision to dismiss him from the University of Louisville School of Medicine. (*See id.*). Clark does not allege that Defendants Koch, Crump, Rao, or Neely had any involvement in

---

[4] Clark's continued issues during this time are irrelevant to the present Motion, as his allegations regarding these issues do not implicate Defendants Koch, Crump, Rao, or Neely.

his career as a medical student aside from the allegations explicitly outlined above. (*See id.*). Ultimately, due to continued subsequent issues, Clark was dismissed from the University of Louisville School of Medicine on July 27, 2020. (*Id.* at 56-57).[5] Clark formally appealed his dismissal, but it was upheld. (*Id.* at 57).

## PROCEDURAL HISTORY

On July 23, 2021, Clark filed this lawsuit against and fourteen individual defendants, alleging four causes of action pursuant to 42 U.S.C. § 1983. (DN 1). On August 10, 2021, Clark filed an Amended Complaint, adding the University of Louisville as a Defendant, additional factual allegations, and another cause of action under § 1983. (*See* DN 4).[6] Clark's Amended Complaint asserts five claims: (1) violation of Clark's right to freedom from speech retaliation; (2) violation of Clark's right to freedom of speech content and viewpoint retaliation; (3) violation of Clark's right to procedural due process; (4) violation of Clark's right to substantive due process; and (5) violation of his right to equal protection of the law. (DN 4, pp. 59-59).

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." "To state a valid claim, a complaint must contain either direct or inferential allegations respecting all the material elements to sustain recovery under some *viable legal theory*." *League of United Latin American Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (emphasis added). But if a plaintiff fails to plead "enough facts to state a claim to relief that is plausible on its face," the complaint should be dismissed for failure to state a

---

[5] Clark's Amended Complaint alleges that he was dismissed on July 24, 2020, (DN 4, p. 57), but he actually received his formal letter of dismissal on July 27, 2020. The differences in these dates, however, are immaterial for purposes of the present Motion, as the relevant analyses do not turn on Clark's date of dismissal.

[6] Notably, the Amended Complaint purports to be both verified and submitted not on August 10, 2021, but on July 23, 2021, the date the *original* Complaint was filed. (*See* DN 4, p. 70-71; DN 1). It is unclear whether the Amended Complaint contains an erroneous date or was not actually verified, but it is clear it was not submitted to the Court on July 23, 2021, but rather on August 10, 2021. (*See* DN 4).

claim upon which relief may be granted. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim for relief can survive a motion to dismiss only when it contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations and quotation marks omitted).

In *Iqbal*, the Supreme Court of the United States established a two-prong approach for determining whether allegations in a pleading satisfy Federal Rule of Civil Procedure 8(a)(2)'s requirements. *Id.* First, the Court must identify whether a pleading consists of factual allegations that allow it to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The Court only assumes the veracity of the allegations after this prong is satisfied to then determine whether the allegations "plausibly give rise to an entitlement of relief." *Id.* at 679. "[T]he court need not accept as true allegations that are conclusory or require unwarranted inferences based on the alleged facts." *Newberry v. Silverman*, 789 F.3d 636, 640 (6th Cir. 2015).

Thus, as the Sixth Circuit has recognized, "to survive a motion to dismiss under Rule 12(b)(6), a complaint must contain (1) enough facts to state a claim to relief that is plausible; (2) more than a formulaic recitation of a cause of action's elements; and (3) allegations that suggest a right to relief above a speculative level." *Estate of Smith ex rel. Richardson v. United States*, 509 Fed. Appx. 436, 439 (6th Cir. 2012) (internal quotation marks omitted). Clark's Amended Complaint does not state facts that plausibly give rise to a claim for relief.

## ARGUMENT

I.   **Clark's Claims Against Koch, Crump, Rao, and Neely are Barred by the Statute of Limitations.**

All five of Clark's causes of action are brought pursuant to 42 U.S.C. § 1983. (*See* DN 4, pp. 59-69). But Clark is precluded from bringing any claims that fall outside the one year statute of limitations

on § 1983 claims in Kentucky. *Bonner v. Perry*, 564 F.3d 424, 430-31 (6th Cir. 2009). "Section 1983, for its part, does not contain a statute of limitations of its own. It incorporates the relevant statute of limitations from the State in which the underlying constitutional tort arises." *Miller v. Cocke Cty.*, No. 21-5585, 2022 U.S. App. LEXIS 1062, at *3-4 (6th Cir. Jan. 11, 2022) (citing *Roberson v. Tennessee*, 399 F.3d 792, 794 (6th Cir. 2005)). It is well settled that § 1983 claims "in Kentucky are limited by the one-year statute of limitations found in [Ky. Rev. Stat. §] 413.140(1)(a)." *Collard v. Ky. Bd. of Nursing*, 896 F.2d 179, 182 (6th Cir. 1990). To determine when a § 1983 cause of action accrues, courts in the Sixth Circuit use an objective test and "look[] to what event should have alerted the typical lay person to protect his or her rights." *Hughes v. Vanderbilt Univ.*, 215 F.3d 543, 548 (6th Cir. 2000) (internal quotations omitted) (emphasis added). Clark's § 1983 claims against Defendants Koch, Crump, Rao, and Neely fall outside of the one year statute of limitations and should be dismissed.

    *1.    Clark's § 1983 Claims Against Defendant Koch*

    Clark's § 1983 claims against Koch are outside of the one year statute of limitations. Clark alleges that Koch "is the Program Director of the Internal Medicine program at the Jackson Street Campus[,]" and that she has "never met or otherwise [known] Clark[.]" (*Id.* at 46-47). The only conduct Clark alleges related to Koch includes: (1) she "authorized and approved" others' unspecified "decisions regarding Clark[;]" (*id.* at 47); and (2) she received a mistreatment complaint from Clark on **February 11, 2020**. (*Id.* at 52-53). Clark commenced this suit over one year later, on July 23, 2021. (DN 1). Clark does not allege that Koch took any actions or had any involvement in Clark's claims after her receipt of his mistreatment complaint in February 2020. (*See* DN 4). Consequently, Clark's claims against Koch fall outside of the one-year statute of limitations. As a result, Clark's § 1983 claims against Koch must be dismissed.

8

2.     *Clark's § 1983 Claims Against Defendant Crump*

Additionally, Clark's § 1983 claims against Crump are clearly time-barred. Specifically, he alleges that Crump sent Clark a letter informing him of the Trover Campus faculty's decision to no longer accept him as a student. (*Id.* at 50). Clark's allegations against Crump all took place in **August 2019**. (*Id.* at 50-51). Clark initiated the present litigation on July 23, 2021. (DN 1). Clark's allegations against Crump are thus indisputably time-barred because they fall well outside of the one-year statute of limitations. Consequently, Clark's § 1983 claims against Crump must be dismissed.

3.     *Clark's § 1983 Claims Against Defendant Rao*

Clark's § 1983 claims against Dr. Mohan Rao ("Rao") are similarly time-barred. Clark alleges that Rao "is a surgical instructor and Program Director of Surgery at the Trover Campus[,]" and that Rao "has never had Clark as a student" and "has never met Clark." (DN 4, pp. 45). However, Clark sates that Rao participated in the decision to remove Clark as a student from the Trover Campus. (*Id.* at 50). Clark's allegations against Rao are, in sum, that Rao "authorized and approved the retaliatory and unconstitutional decisions regarding Clark" at issue in this suit. (*Id.* at 45-56). As with Crump, all of Clark's allegations against Rao took place in **August 2019**. (*Id.* at 50-51). Clark does not allege that Rao took any actions after *August 2019* that purportedly violated his rights. (*Id.*). Consequently, Clark's claims against Rao were brought well outside of the one-year statute of limitations. As a result, Clark's § 1983 claims against Rao must be dismissed.

4.     *Clark's § 1983 Claims Against Defendant Neely*

Finally, Clark's § 1983 claims against Neely are barred by the statute of limitations. Clark alleges that Neely is an "instructor at the Trover Campus[,]" and that in August 2019, Neely retaliated against Clark for Clark's alleged first amendment protected activity. (DN 4, pp. 45; 50). Taking all of Clark's allegations as true, Neely's last interaction with Clark (including Neely's conduct that purportedly violated Clark's rights) took place in **August 2019**. (*Id.*, pp. 49-51). Clark initiated the present litigation

on July 23, 2021. (DN 1). Thus, Clark filed suit *over twenty two months* after his last interaction with Neely wherein Neely purportedly violated his rights. Consequently, Clark's claims against Neely are indisputably barred by the statute of limitations because Neely's purported violations of Clark's rights took place well over one year before Clark commenced this suit. Clark's § 1983 claims against Neely must be dismissed as outside of the statute of limitations.

## II.    The Defendants Acting In Their Official Capacity Are Entitled to Eleventh Amendment Sovereign Immunity.

Clark's official capacity § 1983 claims against Defendants are clearly barred by sovereign immunity and should be dismissed. "The University of Louisville is a state agency cloaked with Eleventh Amendment immunity." *Kaplan v. Univ. of Louisville*, 10 F.4th 569, 576 (6th Cir. 2021) ("*Kaplan*") (affirming the district court's grant of sovereign immunity to the University of Louisville as to former professor's procedural due process claims). As this Court has recognized, "[c]laims against U of L employees in their official capacities are claims against U of L itself[,]" which "is an arm of the Commonwealth of Kentucky and enjoys Eleventh Amendment immunity from suit[.]" *Averett v. Hardy*, Civil Action No. 3:19-cv-116-DJH-RSE, 2020 U.S. Dist. LEXIS 36471, at *13 (W.D. Ky. Mar. 3, 2020). Consequently, Clark's for monetary damages against Defendants in their official capacities must be dismissed "because official-capacity claims for damages against state officials are barred by the Eleventh Amendment." *Id.* at *14 (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)). Defendants are entitled to Eleventh Amendment immunity, and Clark's claims against them in their official capacities must be dismissed.

### 1.    *The* Ex parte Young *Exception Does Not Apply*

Clark has failed to plead a claim for injunctive relief under the limited *Ex parte Young* exception. In limited situations, the *Ex parte Young* exception to the Eleventh Amendment permits suits for prospective declaratory or injunctive relief if suit is brought against a state official acting in an official capacity. *Ex parte Young*, 209 U.S. 123 (1908). "In determining whether the doctrine of *Ex parte Young*

avoids an Eleventh Amendment bar to suit, a court need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Verizon Md. Inc. v. PSC*, 535 U.S. 635, 645 (2002) (quoting *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 296 (1997) (O'Connor, J., concurring)). Additionally, "[t]o take advantage of *Ex parte Young*, '[t]he official against whom suit is brought *must have the authority to perform the act sought*' by the prospective relief." *Saqr v*, 2020 U.S. Dist. LEXIS at *26 (S.D. Ohio Sep. 8, 2020) (quoting *Ling v. Univ. of Tenn.*, 2005 U.S. Dist. LEXIS 51004 (W.D. Tenn. Jan. 3, 2005)) (emphasis added).

While Clark may argue the *Ex Parte Young* doctrine should apply here, the Sixth Circuit has rejected a similar effort by a university professor to "shoehorn his claims into the *Ex parte Young* doctrine[.]" *Kaplan v. Univ. of Louisville*, 10 F.4th 569, 577 (6th Cir. 2021). In *Kaplan*, a professor was banned from campus and terminated from his employment with the university, and the Eleventh Amendment barred his suit because any remedy sought "would necessarily be righting an alleged past wrong, the proper remedy for which would be damages, not injunctive relief." *Kaplan v. University of Louisville*, No. 3:19-CV-825-CRS, 2020 U.S. Dist. LEXIS 131325, *13 (W.D. Ky. Jul. 23, 2020). In the underlying District Court case, the Western District of Kentucky explained that to fall within *Ex parte Young*, the claim must be "brought against state officials in their official capacity" and "seek *prospective* relief to end a continuing violation of federal law." *Id.* at *14-15 (emphasis added).

A cursory review of Clark's injunction request demonstrates the retroactive nature of the relief sought. (DN 4, pp. 69-70). Specifically, at its core, Clark's request for injunctive relief is really a request for the Defendants to reverse a past decision with which he disagreed. (*Id.*). Thus, the *Ex parte Young* doctrine does not apply because Clark is not seeking any form of *prospective* relief. *See Kaplan*, 2020 U.S. Dist. LEXIS 131325 at *13-15. Thus, Clark's official capacity claims are barred by the doctrine of sovereign immunity. Consequently, the Court should dismiss Clark's claims against Defendants in their official capacities.

11

## III.   Clark Fails to State a Claim Against Defendants Koch, Crump, Rao, and Neely

Clark's Amended Complaint is a classic example of a failure to plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  Any "legal conclusions" provided by Clark do not have to be accepted as true and thus may be disregarded. *Iqbal*, 556 U.S. at 678.  Many of Clark's allegations are precisely the sort of "unadorned, the-defendant-unlawfully-harmed-me accusation" Rule 8 prohibits, and are thus insufficient to "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 678-79.

Specifically, "[w]hen suing an individual actor . . . for constitutional violations under § 1983, a plaintiff must demonstrate that the actor '*directly participated*' in the alleged misconduct, at least by encouraging, implicitly authorizing, approving or knowingly acquiescing in the misconduct, if not carrying it out himself." *Flagg v. City of Detroit*, 715 F.3d 165, 174 (6th Cir. 2013) (quoting *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999)) (emphasis added).  "To prove acquiescence, it is not enough to show that the actor merely failed to act against misconduct of which he was aware." *Id.*  Thus, when analyzing whether a plaintiff has stated a claim under § 1983, courts "must analyze separately whether [a plaintiff] has stated a plausible constitutional violation by each individual defendant, and . . . cannot ascribe the acts of all Individual Defendants to each individual defendant." *Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 564 (6th Cir. 2011) (citing *Lanman v. Hinson*, 529 F.3d 673, 684-88 (6th Cir. 2008)).  Under this standard, "liability must lie upon *more than a mere right to control employees* and cannot rely on simple negligence." *Gregory v. City of Louisville*, 444 F.3d 725, 751-52 (6th Cir. 2006) (internal citations omitted; emphasis added).  Essentially, Clark "must allege with particularity, facts that demonstrate what *each* defendant did to violate the asserted constitutional right." *Lanman*, 529 F.3d at 684 (citing *Terrance v. Northville Reg'l Psychiatric Hosp.*, 286 F.3d 834, 842 (6th Cir. 2002) (emphasis original).  Clark's claims are all brought under § 1983 and, thus, each of his claims must *at least* meet this standard.  They do not.

12

Clark has failed to sufficiently allege that Defendants Koch, Crump, Rao, or Neely violated his constitutional rights and, thus, his claims against them should be dismissed.

With regard to Koch, Clark makes very few allegations, stating only that she "is the Program Director of the Internal Medicine program at the Jackson Street Campus," and that she never met Clark but nevertheless "chose to take the incorrect and retaliatory opinions of the three residents named in this complaint, as well as, her own blatant retaliatory opinion to fail Clark in the Internal Medicine course," resulting in Clark's dismissal. (DN 4, pp. 46-47). Yet Clark does not explain what "blatant retaliatory opinion" Koch supposedly had, nor does he explain why he believes she had reason to retaliate against Clark, as he does not allege that she had *any* knowledge of his purported protected conduct. (*Id.*). Regardless, however, Clark cannot state a claim against Koch merely by alleging that she authorized and approved others' decisions (*id.* at 47) because § 1983 only permits liability if *that defendant* caused the deprivation of a Constitutional right, not if others did so. *Heyne*, 655 F.3d at 564. Clark's mere assertion that Koch "authorized and approved" others' decisions is insufficient as a matter of law to state a § 1983 claim against Koch. As a result, Clark's claims against Koch should be dismissed for failure to state a claim.

Clark's claims against Crump suffer similar defects and should be dismissed. The totality of Clark's allegations against Crump are as follows: Crump "authorized and approved" others' decisions regarding Clark, (DN 4, p. 43); a Trover Campus instructor insisted, to Crump, that Clark leave the Trover Campus, (*id.* at 45); Crump instructed Clark on the appropriate manner to address faculty members, (*id.* at 50); and after receiving a letter stating that Trover Campus faculty refused to accept Clark as a student, Crump sent Clark a letter advising him that it was not in his best interest to return to the Trover Campus. (*Id.*). Assuming all of these allegations are true for purposes of the present analysis, Clark has failed to allege that Crump took actions that violated Clark's constitutional rights. Clark's claims against Crump should be dismissed for failure to state a claim.

Similarly, Clark admits that Rao "has never [even] met Clark," but still claims that Rao is liable for "support[ing]" others' "insulting behavior toward Clark" and because he participated in having "Clark removed from the Trover Campus." (*Id.* at 45-46). Clark does not explain how Rao "supported" others' insulting behavior. (*Id.*). Instead, Clark presents two factual allegations against Rao: Clark alleges that Rao (1) was told about a disagreement between Clark and a faculty member, and (2) sent a letter to Defendant Crump stating that Trover Campus faculty would no longer accept Clark as a student. (*Id.* at 50). Additionally, Clark *concludes* that because Rao has supervisory authority over instructors at the Trover Campus, he must be liable for the instructors' actions. (*Id.* at 45-46). Taking Clark's allegations as true, Clark has failed to state a claim as a matter of law against Rao. First, Clark does not allege that Rao actually participated in the decision to remove him from the Trover Campus, nor does he allege that Rao directly participated in actions that violated Clark's constitutional rights. Second, the doctrine of *respondeat superior* does not apply in § 1983 actions to impute liability to supervisors, so Rao may not be liable for instructors' conduct *even if* he has supervisory authority over them. *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Taylor v. Mich. Dep't of Corr.*, 69 F.3d 76, 80-81 (6th Cir. 1995). Clark has failed to allege facts sufficient to show Rao's involvement in *any* of the purported violations of Clark's constitutional rights and his claims against Rao should be dismissed.

Finally, Clark's claims against Neely are similarly deficient as a matter of law. Clark alleges that Neely "engaged in a pattern of insulting conversations with Clark." (*Id.* at 45). Clark also alleges that Neely initiated the process to have Clark leave the Trover Campus, (*id.*), but Clark does not allege that Neely participated in the ultimate decision, nor that Neely had the power to exclude Clark from the Trover Campus. (*See id.* at 50). Assuming that Neely did engage in "insulting conversations" with Clark and requested that his superiors consider having Clark leave the Trover Campus, Clark has failed to illustrate how Neely purportedly violated Clark's rights. Insults are not constitutional violations,

nor are instructors' reports about students' conduct.  In sum, Clark has failed to state a § 1983 claim against Neely, so his claims against Neely should be dismissed.

Clark attempts to tie a web of allegations implicating Defendants in one another's actions and imputing some Defendants' authority to others.  (DN 4).  But at this stage, Clark is required to "allege with particularity, facts that demonstrate what *each* defendant did to violate the asserted constitutional right."  *Lanman*, 529 F.3d at 684 (citing *Terrance*, 286 F.3d at 842 (emphasis original).  Defendants' "liability must lie upon more than a mere right to control employees and cannot rely on simple negligence."  *Gregory*, 444 F.3d at 751-52 (internal citations omitted).  When Clark's allegations against each Defendant are analyzed separately from his allegations against the others, it is clear that Clark has failed to state a claim against Defendants Koch, Crump, Rao, and Neely as a matter of law.  But even if Clark has sufficiently alleged "that [each defendant] 'directly participated' in the alleged misconduct," *Flagg*, 715 F.3d at 174 (citation omitted), he has failed to state a claim under the applicable frameworks for each of his causes of action.

    *1.*    *Clark fails to state a claim for First Amendment retaliation*

In the Sixth Circuit, to establish a claim of First Amendment retaliation, a plaintiff must show that: 1) they were "engaged in a constitutionally protected activity;" 2) the defendant's action caused them "to suffer an injury that would likely chill a person of ordinary firmness from continuing to engage in that activity;" and 3) "that the action was motivated at least in part as a response to the exercise of [their] constitutional rights."  *Leary v. Daeschner*, 228 F.3d 729, 737 (6th Cir. 2000) (quoting *Bloch v. Ribar*, 156 F.3d 673, 678 (6th Cir. 1998)) (quotations omitted); *see also Thompson v. Ohio State Univ.*, 990 F. Supp. 2d 801 (S.D. Ohio 2014) (applying same standard to claims involving students).  Under the first prong, "[t]o demonstrate that he was engaged in constitutionally protected speech, plaintiff must show: 1) his speech touched on a matter of public, as opposed to private, concern; and 2) his 'interest in commenting on matters of public concern ... outweighs the interest of the State.'"  *Flaim v. Med. College of Ohio*, No.

15

3:03-cv-197, 2004 U.S. Dist. LEXIS 5633 at *27-28 (N.D. Oh., Mar. 16, 2004) (quoting *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1048 (6th Cir. 2001)) (edits original). And under the third prong, a plaintiff "must show that his First Amendment protected activities were a motivating factor, or essentially a but-for cause – without which the action being challenged simply would not have been taken." *Holsapple v. Cunningham*, 817 Fed. App'x 95, 101 (6th Cir. 2020) (cleaned up).

Clark's First Amendment retaliation claim is deficient as a matter of law. First, Clark has not sufficiently alleged that he engaged in protected activity under the First Amendment. It is difficult to glean from the face of Clark's Amended Complaint *what* his alleged protected speech actually was. Specifically, Clark alleges that his purported "protected activity" included:

- Inviting a speaker to campus to give a "presentation as to when life actually" begins, (DN 4, p. 48-49);

- "[P]articipat[ing] in respectful verbal oppositional activity" by telling Neely that Neely was the worst preceptor Clark ever had, (*id.* at 49);

- "[E]ngag[ing] in respectful verbal oppositional activity" with a *different* preceptor wherein Clark challenged that preceptor's criticisms of Clark (*id.* at 52); and

- Reiterating his complaints to the Student Promotions Committee while "attempt[ing] to defend himself[.]" (*Id.* at 56).

Clark's purported First Amendment activity with Neely and his other preceptor unquestionably dealt with matters of *private* concern, as they related solely to Clark's interpersonal relationships and interactions with those preceptors. (*Id.* at 49, 52). Regardless, none of his allegations clearly spell out the contents of Clark's purported First Amendment speech that he now claims is protected. (*Id.*).

Notwithstanding the lack of clarity around the content of Clark's alleged protected speech, Clark also fails to provide sufficient detail about the form and context of his speech to demonstrate that it was protected. Specifically, Clark divulges little detail about the audiences of his purported protected speech. (*Id.* at 48-49, 52, 56). Moreover, Clark does not provide any allegations about the timing or location of

16

his alleged First Amendment activity demonstrating that his speech was made in any sort of public or quasi-public forum. (*Id.*).

More glaringly, Clark fails to allege any causal connection between his alleged protected activity and any adverse education outcomes he had. Critically, **Clark does not allege that his adverse education actions were the result of his purported protected activity**. First, Clark does not allege that any Defendants even knew about the presentation by the speaker he invited to campus, much less that they took adverse action against Clark *because of* the content of that speaker's presentation. (*Id.* at 48-49). Second, while Clark alleges that he engaged in protected speech with Neely, Clark does not allege that Neely told anyone about Clark's alleged protected speech. (*Id.* at 49-50). Moreover, Clark does not allege that Rao or Crump's decision to exclude Clark from the Trover Campus was in any way related to the content of Clark's alleged protected speech with Neely. (*Id.* at 50) (alleging that Crump's decision was "a result of the *actions of Rao and Neely*, and *their conversations* with Crump[.]"). Third, while Clark alleges that a resident physician recommended that Clark fail the Internal Medicine clerkship "as a result of" Clark's disagreement with his preceptor, Clark does not allege that the resident physician *knew anything about Clark's allegedly protected speech*. (*Id.* at 52) (alleging only that the resident physician is a "friend and colleague of" the preceptor with whom Clark spoke).

Finally, Clark alleges that the Student Promotions Committee recommended Clark's dismissal "after" his alleged protected activity during his SPC hearing, with a bare, formulaic conclusion that this recommendation was "solely as a result of" Clark's "various aforementioned protected speech campus, [sic] his political and religious viewpoint, the oppositional speech on Clark's clerkships, and speech before the Student Promotions Committee." (*Id.* at 56). Allegations that a decision-maker knew of the alleged protected activity (in addition to the close temporal proximity of their actions) are sufficient to establish the required element of causation. *See Bright v. Gallia Cty.*, 753 F.3d 639, 653-54 (6th Cir. 2014) (collecting cases). But Clark does not allege that the Committee had any knowledge of his prior instances

17

of alleged protected activity. (*Id.*). While Clark attempts to create the appearance that each adverse educational outcome he had was related to his alleged protected activity, he has failed to allege that the decision makers at *any* stage had knowledge of his purported protected activities. Clark has failed to state a viable First Amendment retaliation claim, so his first cause of action should be dismissed.

  2.  *Clark fails to state a First Amendment content or viewpoint discrimination claim*

  "[T]he government may not regulate speech based on its substantive content or the message it conveys." *Rosenberger v. Rector & Visitors of the Univ. of Va.*, 515 U.S. 819, 828 (1995). "Regulation of speech based on content excludes a category of speech, whereas viewpoint discrimination favors a particular position." *Lowden v. County of Clare*, 709 F. Supp. 2d 540, 560 (E.D. Mich. Mar. 26, 2010) (citing *Boos v. Barry*, 485 U.S. 312, 319 (1988)). Clark has failed to state a claim content or viewpoint discrimination.

  First, Clark has not alleged that any Defendants took any actions that excluded a *category* of speech. In sum, Clark's alleged protected activity included (a) inviting a speaker to give a presentation, (b) "respectful verbal oppositional activity" with his instructors, and (c) "reiterated his concerns" about the aforementioned alleged protected activity. (DN 4, p. 48; 49-50; 51-52; 56). Clark has not alleged that any of these categories of speech have been regulated or that Defendants have sought to limit these categories of speech in any way. (*Id.*). Moreover, **Clark has failed to identify his viewpoint** such that his viewpoint discrimination claim may even be articulated. (*Id.*). Clark has not alleged that any Defendants sought to regulate his speech based on his viewpoint. (*See id.*). In fact, Clark has failed to allege that Defendants sought to regulate his speech at all. (*Id.*)[7] Clark has not demonstrated that Defendants affirmatively excluded speech by category or a specific viewpoint, like denying a Christian

---

[7] At most, Clark alleges that the University of Louisville School of Medicine implemented a time, place, and manner restriction on speech *after* his alleged protected activity, (DN 4, pp. 48-49), but he does not allege that any Defendants sought, enacted, or implemented this restriction. (*Id.*).

student organization funding to print its newspaper or prohibiting a religious organization access to public facilities. *See Rosenberger v. Rector and Visitors of University of Virginia,* 515 U.S. 819 (1995); *Lamb's Chapel v. Center Moriches Union Free School District,* 508 U.S. 384 (1993). Clark has failed to state a claim for First Amendment content or viewpoint discrimination as a matter of law, and his second cause of action should be dismissed.

3.   *Clark fails to state a claim for a procedural due process violation*

A plaintiff claiming violation of his procedural due process rights must allege facially plausible facts showing that (1) he had a fundamental liberty or property interest (2) that was deprived without sufficient notice or opportunity to be heard. *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 572-73. As the Sixth Circuit has recognized, "due process is not a fixed or rigid concept, but rather, is a flexible standard which varies upon the nature of the interest affected, and the circumstances of the deprivation." *Flaim v. Med. College of Ohio,* 418 F.3d 629, 634 (6th Cir. 2005). In the context of school discipline, an accused student must be provided (1) notice of the charges against him; (2) an explanation of the evidence against him; and (3) an opportunity to present his side before an unbiased decisionmaker. *Heyne v. Nashville Public Schools,* 655 F.3d 556, 565-66 (6th Cir. 2011). Once a student has been provided notice and a hearing, "courts should refrain from second-guessing the disciplinary decisions made by school administrators." *Davis v. Monroe County Board of Education,* 526 U.S. 629, 648 (1999).

Clark's Amended Complaint is clear that he received procedural due process. Specifically, Clark explicitly admits "that he was given some manner of notice and opportunity to be heard in accordance with academic discipline as defined by the United States Constitution[.]" (DN 4, p. 63). This is all due process requires. *See Johnson v. Morales,* 946 F.3d 911, 928 (6th Cir. 2020) (affirming district court's grant of motion to dismiss when plaintiff conceded that they had been provided notice and an opportunity for a hearing). Clark received notice of his charges and an opportunity to be heard, and the mere fact that he disagrees with the outcome does not state a claim for violation of procedural due process. Nor

19

does the fact that Clark would appreciate greater protections than due process requires.  (*Id.* at 63-64)

(complaining that unnamed "faculty and leadership of the School" allegedly failed "to adequately

consider alternative methods of discipline[.]").  Clark received notice of his academic disciplinary

proceedings, (*id.* at 54), was able to provide evidence, (*id.* at 54-55), and in fact offered a statement at the

hearing in which he voiced his concerns.  (*Id.* at 56).[8]  Clark's academic disciplinary proceedings met and

exceeded the requirements for procedural due process.  Further, Clark has not alleged that any

Defendants deprived him of notice or an opportunity to be heard.  (*See id.*).  Clark has failed to state a

claim for a procedural due process violation, and his third cause of action should be dismissed.

    4.    *Clark fails to state a claim for a substantive due process violation*

"To state a claim of substantive due process, [Clark] must allege facts that would establish that

'(1) a constitutionally protected property or liberty interest exists, and (2) the constitutionally protected

interest has been deprived through arbitrary and capricious action.'"  *Bertovich v. Vill. Of Valley View*, 431

Fed. App'x 455, 459-60 (6th Cir. 2011) (quoting *Braun v. Ann Arbor Charter Twp.*, 519 F.3d 564, 573 (6th

Cir. 2008)).  "In order to establish such arbitrary and capricious action, the plaintiff[] must show that

there is no rational basis for the University's decision, or that the decision to dismiss was motivated by

bad faith or ill will unrelated to academic performance."  *Stevens v. Hunt*, 646 F.2d 1168, 1170 (6th Cir.

1981) (citations omitted).

    Clark offers only conclusory statements and a bare recitation of the elements in support of his

substantive due process claim.  (DN 4, p. 64-66).  He makes vague, unsupported references to the

treatment of unspecified "other students" as a means of establishing that Defendants acted arbitrarily

and capriciously.  (*Id.* at 66).  Cursory references to alleged violations of substantive due process are

---

[8] Ironically, Clark's opportunity to be heard was so sufficient that he was able to "complain[] about the lack of due process and lack of transparency" at a hearing for which he was given notice and was contemporaneously utilizing his opportunity to be heard.  (*Id.*).

insufficient to adequately plead a claim. *See Nichols v. Dwyer*, 856 F. App'x 589, 601 (6th Cir. 2021). Clark also does not specify a single action taken by any individual Defendant that was purportedly arbitrary and capricious; instead, he wages vague and conclusory allegations against "faculty," generally. (*Id.* at 64-66). Clark has utterly failed to state a claim for a substantive due process violation and, as such, his fourth cause of action should be dismissed.

     5.    *Clark fails to state a claim for an equal protection violation*

"The threshold element of an equal protection claim is disparate treatment; once disparate treatment is shown, the equal protection analysis is determined by the classification used by government decision-makers." *Scarbrough v. Morgan County Board of Education*, 470 F.3d 250, 260 (6th Cir. 2006). Where a plaintiff asserts that "others 'similarly situated' received different treatment 'without any rational basis for the difference[,]'" it is referred to as "a 'class-of-one' theory." *Davis v. Detroit Pub Sch. Cmty. Dist.*, 835 Fed. App'x 18, 22 (6th Cir. 2020) (citations omitted). Under a class-of-one theory, a plaintiff's failure to provide concrete allegations about the treatment of similarly situated persons is fatal to his claim. *Id.* (citing *Braun*, 519 F.3d at 575).

Clark attempts to craft allegations sufficient to state an equal protection violation claim in two ways. First, Clark makes conclusory allegations that "Defendants" (presumably all fifteen of them) took actions which were improper. But Clark "cannot ascribe the acts of all Individual Defendants to each individual defendant." *Heyne*, 655 F.3d at 564. It is impossible to gleam the identity of the individuals implicated in Clark's equal protection claim from Clark's Amended Complaint. (DN 4, pp. 66-67). But Clark aims to cure this deficiency in the second route through which he attempts to state an equal protection claim: Clark engages in a formulaic recitation that each individual Defendant subjected Clark to "demeaning, disparaging, and belittling behavior," and that "[n]o other students have been or are subject to" such behavior. (*Id.* at 67-68). **But Clark fails to provide the identity of a single other student** which he claims has been treated in a different manner than he has. (*See* DN 4). This

21

is fatal to his claim as Clark must identify similarly situated individuals to state a cognizable claim. In *Davis v. Detroit Pub. Sch. Cmty. Dist.*, the Sixth Circuit affirmed the trial court's dismissal of a plaintiff's equal protection claim "because he . . . identified no similarly situated individuals." 835 F. App'x 18, 22 (6th Cir. 2020). Clark's equal protection claim is no different and amounts to nothing more than general and conclusory allegations against all Defendants with a formulaic assertion of disparate treatment by each individual Defendant. (*Id.* at 66-69). This is not enough to state a claim as a matter of law. Clark has failed to allege any facts suggesting that any Defendant treated other students in a different manner than they treated Clark. Moreover, even *if* any Defendant treated Clark differently, Clark has not shown that there was no rational basis for the different treatment. (*See* DN 4). Clark has failed to state a claim for an equal protection violation and, consequently, his fifth cause of action should be dismissed.

## CONCLUSION

Clark aims to bring time-barred claims against Defendants Koch, Crump, Rao, and Neely, but he has failed to state a claim upon which relief can be granted. Furthermore, the Defendants are protected by Eleventh Amendment immunity from Clark's claims. As such, Defendants Koch, Crump, Rao, and Neely respectfully request that the Court enter their tendered Order dismissing this matter with prejudice as a matter of law.

Respectfully submitted,

/s/ *Suzanne Marino*
Donna King Perry
Suzanne Marino
Aaron Vance
Dinsmore & Shohl LLP
101 South Fifth Street, Suite 2500
Louisville, KY 40202
(502) 540-2300
donna.perry@dinsmore.com
suzanne.marino@dinsmore.com
aaron.vance@dinsmore.com
*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing was served via the Court's electronic case management system (CM/ECF) on this 31st day of January, 2022, upon the following:

Timothy Denison
235 South Fifth Street
Louisville, KY 40202
(502) 589-6916
Timothydenison1965@gmail.com

Robert Frederick Smith
9219 U.S. Highway 42
Prospect, KY 40059
(502) 592-3407
rfcsmith@me.com
*Counsel for Plaintiff*

/s/ *Suzanne Marino*
*Counsel for Defendants*

23