UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

AUSTIN ROY CLARK,                                                                  Plaintiff,

v.                                                          Civil Action No. 3:21-cv-480-DJH-LLK

UNIVERSITY OF LOUISVILLE et al.,                                              Defendants.

* * * * *

**MEMORANDUM AND ORDER**

Plaintiff Austin Roy Clark sued fourteen University of Louisville employees in their individual and official capacities, alleging that he was denied his constitutional rights to free speech, procedural due process, and equal protection during the events that led to his dismissal from the university's medical school.  (Docket No. 1)  Clark filed an amended complaint adding the University of Louisville (U of L) as a defendant and adding a substantive due process claim. (D.N. 4)  Five of the defendants—then-University President Neeli Bendapudi, Provost Lori Gonzalez, Dean of the School of Medicine Toni Ganzel, Associate Dean Olivia Mittel, and Vice Dean Monica Shaw—moved to dismiss, arguing that the official-capacity claims are barred by the Eleventh Amendment and that Clark fails to state a plausible claim for relief against them in their individual capacities.  (D.N. 9)  Upon being served, four of the remaining defendants—Associate Dean Bill Crump, Dr. Thomas Neely, Dr. Mohan Rao, and Dr. Jennifer Koch—filed a second motion to dismiss on similar grounds.[1]  (D.N. 26)  Clark's attempts to cast himself as having been

---

[1] The final five defendants—U of L, Dr. Sara Petruska, Associate Professor Julianna Brown, Dr. Cristina Giles, Dr. Jon Alexander, and Dr. Samuel Reynolds—have yet to appear.  (*See* D.N. 33 (directing Clark to show cause why claims against Petruska, Brown, Giles, Alexander, and Reynolds should not be dismissed pursuant to Federal Rule of Civil Procedure 4(m)))  The Court will direct Clark to show cause why the claims against U of L should not be dismissed pursuant to Rule 4(m) in this Order as well.

subjected to unconstitutional disciplinary procedures because of his personal beliefs are not supported by his own factual allegations. For the reasons explained below, the Court will grant both motions to dismiss.

## I.

The following facts are set forth in the amended complaint and accepted as true for purposes of the present motion. *See Siefert v. Hamilton Cnty.*, 951 F.3d 753, 757 (6th Cir. 2020). Between July 2017 and July 2020, Austin Roy Clark was enrolled as a medical student at the University of Louisville School of Medicine (ULSOM), attending both the Madisonville Trover Campus and the Jackson Street Louisville Campus. (D.N. 4, PageID.41 ¶ 14; *id.*, PageID.48, ¶ 39; *id.*, PageID.56–57 ¶ 72) During his second year at ULSOM, Clark was president of the student organizations "Medical Students For Life" and "Christian Medical and Dental Association." (*Id.*, PageID.48 ¶ 42) Clark invited a "Christian speaker" to ULSOM to make an "academic presentation as to when life actually began." (*Id.*) Clark alleges that this event "generated substantial opposition" (*id.*, PageID.49 ¶ 43), because "the speaker put forward ideas that are not held by the majority of students or faculty at ULSOM leading to oppositional and retaliatory conduct from the administration." (*Id.* at ¶ 44)

During Clark's third year of medical school, he was enrolled in a class on Obstetrics and Gynecology taught by Dr. Neely. (*Id.* at ¶¶ 45–46) On August 10, 2019, Clark engaged in "respectful verbal opposition activity regarding his treatment from Defendant Neely." (*Id.* at ¶ 46) Clark told Neely that Neely was "not going to treat [him] that way" and that Neely was "the worst preceptor [he had] ever had." (*Id.*) Neely responded by calling Clark stupid and asking if his brain was working. (*Id.*) Clark alleges that later that day, Neely spoke with Rao, a surgical instructor, and Crump, the Assistant Dean, about Clark's behavior. (*Id.*, PageID.50 ¶ 47) Crump told Clark

that Clark could not speak in that manner "to a senior faculty member." (*Id.*)  Four days later, Rao

sent a letter to Crump stating that the Madisonville Surgical OBGYN faculty "w[ould] not accept

him (Clark) as a student here (Madisonville Trover Campus)." (*Id.* at ¶ 49)  Crump then instructed

Clark that it was "not 'in his best interest for him to return to the Trover Campus.'" (*Id.* at ¶ 50)

On September 15, 2019, Clark met with Associate Dean Mittel, who required Clark to sign

a "professionalism contract" because of his previous interaction with Neely.[2]   (*Id.*, PageID.51

¶ 51)  Clark alleges that no other students have ever been required to sign a professionalism

contract. (*Id.* at ¶ 52)  On October 5, 2019, Clark met with Dr. Petruska and Mittel to discuss "the

retaliatory conduct from Thomas Neely and Mohan Rao." (*Id.* at ¶ 53)  When Clark attempted to

defend himself, Petruska and Mittel allegedly told Clark that he "only sees himself as a victim."

(*Id.*)

On February 7, 2020, Clark engaged in "respectful verbal oppositional activity" with Jon

Alexander, a resident physician in the Internal Medicine Program. (*Id.*, PageID.51–52 ¶ 54)  Clark

told Alexander that his "criticism and overbearing behavior" were unwarranted. (*Id.*)  Dr.

Alexander responded that he was a "third year resident and [Clark was] a student." (*Id.*)  Alexander

gave Clark a failing grade for the Internal Medicine Clinic. (*Id.*)  Clark alleges that Alexander had

signed a memorandum several days earlier saying that Clark had "exceeded expectations" in the

clinic. (*Id.*)  One of Alexander's colleagues, Dr. Reynolds, emailed Dr. Brown, the Internal

Medicine Clerkship Director, to recommend that Clark be removed from the course and given a

---

[2] The "professionalism contract" was filed under seal by the defendants pursuant to the Family
Educational Rights and Privacy Act. (D.N. 12-2)  The Court notes here that the defendants
describe the document as outlining "the standards required to graduate from the University of
Louisville School of Medicine," a typical student performance agreement. (*Id.*)  The nature of the
contract is not determinative of any issues here. The parties do not dispute its content or purpose,
and the Court need not interpret its terms.

3

failing grade based on Alexander's interaction with Clark. (*Id.*) Clark alleges that the next day, Reynolds "physically harassed and bullied" him "as a result of the respectful First (1st) Amendment oppositional activity with Jon Alexander." (*Id.* at ¶ 56)

On February 17, 2020, Dr. Giles, another resident physician in the Internal Medicine Program, gave Clark a failing performance evaluation "solely as a result of the aforementioned protected activities." (*Id.*, PageID.53 ¶ 57) Giles had previously signed a memorandum stating that Clark "exceeded performance expectations." (*Id.*) As a result of the failing evaluations from Alexander and Giles, Clark failed the Internal Medicine Clerkship. (*Id.* at ¶ 58) Failure of a course "triggered a meeting with the Student Promotions Committee of the Office of Medical Student Affairs" (SPC). (*Id.* at ¶ 59)

Clark's initial meeting with the SPC was canceled "due to COVID," and he began his surgical rotation. (*Id.*, PageID.54 ¶¶ 60–61) On the first day of the surgical rotation, Dean Ganzel called Clark's preceptor, which Clark claims is a "practice that is not typical." (*Id.* at ¶ 61) Clark later received a failing evaluation from his supervising surgery resident, who is subordinate to the preceptor who received a call from Ganzel. (*Id.* at ¶ 62) The resident's evaluation mentioned Clark's belief in the "biases of his Internal Medicine evaluations." (*Id.*) Clark alleges that he never mentioned his Internal Medicine rotation to the evaluator. (*Id.* at ¶ 63)

Clark's meeting with the SPC was rescheduled for May 29, 2020. (*Id.* at ¶ 64) Clark alleges that while the initial meeting was supposed to only discuss his Internal Medicine rotation, the new meeting would consider his "entire academic record." (*Id.*) Clark alleges that ULSOM changed its policy "with regards to the dismissal and academic discipline of medical students" between March 10 and May 20, 2020. (*Id.*, PageID.55 ¶ 65) To prepare for the meeting, Clark requested "emails and documents from the ULSOM," but "ULSOM repeatedly denied most of his

4

requests." (*Id.*, PageID.56 ¶ 70)  Clark sent other evidence for his defense to Associate Dean Mittel via email, and she said she would "consider it." (*Id.*, PageID.55 ¶ 67)

On May 27, Clark filed a complaint with the Liaison Committee for Medical Education concerning the university's alleged failure to "correct such demeaning treatment and due to substantial restrictions on Clark's First (1st) Amendment right to free speech." (*Id.*, PageID.55 ¶ 68)  On May 28, Clark filed a complaint with the Department of Health and Human Services Office for Civil Rights on the same grounds. (*Id.* at ¶ 69)

Clark met with the SPC on May 29, 2020. (*Id.*, PageID.55 ¶ 70)  During the meeting, Clark "(1) reiterated his concerns regarding restrictions on his constitutional right to free speech, viewpoint discrimination, and student abuse, (2) . . . complain[ed] about the lack of due process and lack of transparency, and (3) . . . attempt[ed] to defend himself." (*Id.*, PageID.56 ¶ 71)  The SPC recommended Clark's dismissal to Dean Ganzel (*id.*), and Ganzel upheld the recommendation. (*Id.*, PageID.57 ¶ 72)  Between July 2020 and August 2020, Clark attempted to "formally appeal his dismissal through the University academic grievance procedures." (*Id.* at ¶ 73)  Clark alleges that he was unable to file a grievance due to "repeated and continual University obstruction." (*Id.*)

Clark filed this action on July 23, 2021, under 42 U.S.C. § 1983, alleging that the fourteen named defendants violated his constitutional rights to free speech, procedural due process, and equal protection. (D.N. 1)  Clark later amended his complaint, adding U of L as a defendant and adding a substantive due process claim. (D.N. 4)  Upon being served, Bendapudi, Gonzalez, Ganzel, Mittel, and Shaw filed a motion to dismiss. (D.N. 9)  Upon being served several weeks later, Koch, Crump, Rao, and Neely also moved to dismiss. (D.N. 26)  For the reasons discussed below, the Court finds that the amended complaint contains only conclusory statements that Clark

was discriminated against because of his beliefs, without sufficient factual allegations to support those claims.

## II.

To avoid dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. If "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the plaintiff has not shown that he is entitled to relief. *Id*. at 679. For purposes of a motion to dismiss, "a district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M&G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009)). "But the district court need not accept a 'bare assertion of legal conclusions.'" *Id*. (quoting *Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995)). A complaint is not sufficient when it only "tenders naked assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (internal quotations omitted) (citing *Twombly*, 550 U.S. at 557).

## A.    FIRST MOTION TO DISMISS

Bendapudi, Gonzalez, Ganzel, Mittel, and Shaw (first defendants) argue that all of Clark's official-capacity claims against them are barred by sovereign immunity and all of the individual-capacity claims against them are barred by qualified immunity. As explained below, the Court concludes that the first defendants are entitled to qualified immunity because Clark fails to state a claim that his constitutional rights were violated. As a result, the Court need not address the

sovereign-immunity argument.

### 1.    Consideration of Documents Outside the Complaint

When a district court decides a Rule 12(b)(6) motion, it may "consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (citing *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001). Here, the first defendants filed three exhibits under seal alongside their motion to dismiss, all of which are referred to in the amended complaint:

- Exhibit One: A July 27, 2020 letter from Dean Ganzel to Clark affirming Clark's expulsion. (D.N. 20-1) Clark alleges that Ganzel "issued a formal letter to Clark dismissing him from the ULSOM." (D.N. 4, PageID.57) ¶ 72)

- Exhibit Two: A September 17, 2019 professionalism contract signed by Clark. (D.N. 12-2) Clark alleges that Associate Dean Mittel "required him to sign a 'professionalism contract.'" (D.N. 4, PageID.43 ¶ 28)

- Exhibit Three: A May 29, 2020 memo from Simms (Director who oversaw the Student Promotions Committee Meeting) to Ganzel, recommending Clark's dismissal. (D.N. 12-3) Clark alleges that the Student Promotions Committee "recommended, to Defendant Ganzel, Clark's dismissal." (D.N. 4, PageID.56 ¶ 71)

The exhibits therefore satisfy the first *Bassett* prong. *See* 528 F.3d at 430. They satisfy the second prong as well: because Clark alleges that the defendants violated his constitutional rights during the school disciplinary process, documents that detail the process Clark received are "central to the claims contained" in his amended complaint. *Id.*; *see, e.g.*, *Brent v. Wayne Cnty. Dep't of*

*Hum. Servs.*, 901 F.3d 656, 699 (6th Cir. 2018) (finding that a police department's policy was "central to the claims contained" within a complaint that alleged the department failed to follow its policy); *Stein v. HHGREGG, Inc.*, 873 F.3d 523, 528 (6th Cir. 2017) (finding that a company's compensation policy was "central to the claim[]" that the company's policy violated the Fair Labor Standards Act).

The Court must also determine whether it may consider the affidavit that Clark attached to his response. (D.N. 18-1, PageID.167–76) In general, "affidavits attached to briefs may not properly be considered at the motion to dismiss stage." *Hill v. Funk*, No. 4:18-CV-P170-JHM, 2019 U.S. Dist. LEXIS 75643, at *3 (W.D. Ky. May 3, 2019) (citation omitted). Neither the complaint nor the amended complaint refers to Clark's affidavit, and the affidavit is not a public record. *Bassett*, 528 F.3d at 430; *see also Rudd v. City of Norton Shores,* No. 1:18-CV-124, 2018 U.S. Dist. LEXIS 133746, at *11 (W.D. Mich. Aug. 8, 2018) (refusing to consider an affidavit filed in support of a Rule 12(b)(6) motion despite movant's argument that "a court may consider an affidavit that merely 'clarifies' facts alleged in a complaint" because doing so "would obliterate the distinction between a Rule 12(b)(6) motion to dismiss and a Rule 56 motion for summary judgment."). The Court thus will not consider Clark's affidavit.

### 2.    Qualified Immunity

Bendapudi, Gonzalez, Ganzel, Mittel, and Shaw argue that Clark's individual-capacity claims against them are barred by qualified immunity. (D.N. 9, PageID.93) When a public official is sued in her individual capacity, qualified immunity shields her from suit unless her conduct violated a clearly established constitutional right of which a reasonable official would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). If a defendant raises qualified immunity as a defense, the plaintiff bears the burden of demonstrating that the defendant is not entitled to such

immunity.  *Crawford v. Tilley*, 15 F.4th 752, 760 (6th Cir. 2021); *Everson v. Leis*, 556 F.3d 484, 494 (6th Cir. 2009).  Still, the Sixth Circuit has cautioned against "'resolv[ing] a Rule 12(b)(6) motion on qualified immunity grounds' because development of the factual record is frequently necessary to decide whether the official's actions violated clearly established law."  *Hart v. Hillsdale Cnty.*, 973 F.3d 627, 635 (6th Cir. 2020) (quoting *Singleton v. Kentucky*, 843 F.3d 238, 242 (6th Cir. 2016)).  The Court may decide a subset of cases at the motion-to-dismiss stage if the plaintiff has not plausibly shown a violation of his clearly established rights.  *Siefert*, 951 F.3d at 762.

To determine if an official is entitled to qualified immunity, the Court first views the facts alleged in the light most favorable to the plaintiff to see whether those facts show that the official's conduct violated a constitutional right.  *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  If no constitutional right would have been violated on the facts alleged, the inquiry ends, and the official is entitled to qualified immunity.  *Id.*  If a violation can be made out based on a favorable view of the pleadings, the Court must then determine whether the right at stake was clearly established.  *Id.*  As explained below, the Court finds that Clark has not plausibly alleged that the first defendants violated his constitutional rights.

### a.    Retaliation

Clark alleges that the first defendants violated his First and Fourteenth Amendment rights by retaliating against him because he engaged in protected speech.  (D.N. 4, PageID.59–61 ¶¶ 86– 92)  The Sixth Circuit recognizes that the Free Speech Clause prohibits public universities from suppressing speech "because of its message."  *Ward v. Polite*, 667 F.3d 727, 732–33 (6th Cir. 2012) (citing *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 828 (1995).  To establish a First Amendment retaliation claim, Clark must show that "(1) he engaged in protected

conduct; (2) the defendants took an adverse action against him; and (3) a causal connection exists between the two." *Rudd v. City of Norton Shores, Mi.*, 977 F.3d 503, 513 (6th Cir. 2020) (citing *Novak v. City of Parma*, 932 F.3d 421, 427 (6th Cir. 2019)).

Clark first claims that he was retaliated against for his "political and religious beliefs as exhibited by his activities in . . . Medical Students for Life and the Christian Medical and Dental Association." (D.N. 4, PageID.58 ¶ 77) The amended complaint describes the event that Clark's organizations planned, as well as the negative reaction "from many faculty and students" and certain restrictions imposed by ULSOM. (*Id.*, PageID.48–49 ¶¶ 42–44) Clark further alleges that "Defendants" violated his First Amendment rights "by (1) submitting him to heightened scrutiny under 'professionalism' standards, (2) arbitrarily and capriciously awarding failing grades, and (3) . . . remov[ing him] from the ULSOM" as punishment for "expressing his pro-life and religious views through the speech made by Alex McFarland on campus." (*Id.*, PageID.60 ¶ 87)

These allegations are insufficient to state a retaliation claim for two reasons. First, Clark fails to identify which defendants retaliated against him. *See Boxill v. O'Grady*, 935 F.3d 510, 518 (6th Cir. 2019) ("Summary reference to a single, five-headed "Defendants" does not support a reasonable inference that each Defendant is liable for retaliation." (citing *Heyne v. Metro Nashville Pub. Sch.*, 755 F.3d 556, 564 (6th Cir. 2011))). Second, Clark fails to allege facts showing that the defendants took retaliatory action *because of* his views. *See id.* (finding that dismissal was proper because the plaintiff "offer[ed] no facts to support a reasonable inference that any of the[] Defendants" took adverse action against her "in response to [plaintiff's] protected speech"). Absent any factual allegations suggesting that the defendants were motivated by Clark's religious or political expression, the amended complaint fails to state a claim for retaliation. *See Koch v. Dep't of Natural Res., Div. of Wildlife*, 858 F. App'x 832, 837 (6th Cir. 2021) (finding

that a claim for retaliation requires the allegation that the adverse action was motivated by the protected conduct (citing *Mezibov v. Allen*, 411 F.3d 712, 717 (6th Cir. 2005))).

Clark also claims that the first defendants retaliated against him because he filed complaints against ULSOM with the Liaison Committee for Medical Education (LCME) (D.N. 4, PageID.55 ¶ 68), and with the Health and Human Services Office for Civil Rights (HHS OCR) (*id*., PageID.55 ¶ 69). (*Id.*, PageID.58) This allegation fails to state a claim for two reasons. First, Clark did not plead any "plausible, non-conclusory facts to show that [the defendants] w[ere] even aware of h[is] complaints." *Boxill*, 935 F.3d at 518. Second, even if the defendants were aware of the complaints, Clark does not allege any facts that suggest they disciplined him *because* he filed the complaints. *Rudd*, 977 F.3d at 515; s*ee also Salyers v. Anthem Blue Cross Blue Shield*, No. 3:20-cv-124-BJB-LLK, 2021 U.S. Dist. LEXIS 131981, at *5–6 (W.D. Ky. July 15, 2021) (granting a motion to dismiss a retaliation claim because the plaintiff "points to no factual allegations that directly or circumstantially support her assertion that [the defendant] terminated her because she engaged in a protected activity. Indeed, she never identifies . . . whether the person who decided to [dismiss] her knew about any protected activity") (citing *Harris v. Burger King Corp.*, 993 F. Supp. 2d 677, 689 (W.D. Ky. 2014)). Clark offers only the conclusory assertion that he was disciplined "as a result" of his complaints. (D.N. 4, PageID.40 ¶ 8; *id.*, PageID.53 ¶ 57; *id.* at ¶ 58; *id.*, PageID.56 ¶ 71) Those allegations are insufficient to survive a motion to dismiss. *See Agema v. City of Allegan*, 826 F.3d 326, 333 (6th Cir. 2016) (affirming a motion to dismiss when the complaint did not allege "sufficient accompanying facts" to plausibly state a claim).

Clark finally alleges that the first defendants retaliated against him for engaging in "verbal and written attempts to obtain a modicum of respect as a medical student." (D.N. 4, PageID.58 ¶ 77) Specifically, Clark engaged in several conversations with ULSOM employees in which

11

Clark disagreed with their methods of teaching and treatment of him.[3]  The issue is whether Clark's "respectful verbal oppositional activity regarding his treatment" (D.N. 4, PageID.49 ¶ 46), qualifies as constitutionally protected speech such that the defendants could not discipline him for it without running afoul of the First Amendment.  *See Ryan v. Blackwell*, 979 F.3d 519, 527 (6th Cir. 2020) (affirming a motion to dismiss because plaintiff's "speech was not on a matter of public concern and therefore not protected").

The Sixth Circuit has held that a student's First Amendment retaliation claim "fails at the inception where his alleged speech, i.e., his conduct of disrupting the classroom milieu for the sole purpose of advancing or pursuing his admitted 'power struggle' with the University, was not protected activity." *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 208 (6th Cir. 1998) (citing *Tinker v. Des Moines Cmty. Sch. Dist.*, 393 U.S. 503 (1969)).  Further, "conduct by the student, in class or out of it, which for any reason – whether it stems from time, place, or type of behavior – materially disrupts classwork or involves substantial disorder . . . is, of course, not immunized by the constitutional guarantee of freedom of speech." *Tinker*, 393 U.S. at 513.

Even taking all allegations in the amended complaint as true, the Court does not find any facts to support Clark's allegation that his statements to ULSOM faculty qualify as protected speech.  Clark allegedly told Dr. Neely that he was "the worst preceptor [Clark had] ever had" (D.N. 4, PageID.49 ¶ 46), and told Dr. Alexander that he was "unjust" and "unfair."  (Id., PageID.51–52 ¶ 54)  Criticism of educational faculty, "where the expression appears to have no

---

[3] The amended complaint details two situations where Clark engaged in "respectful verbal oppositional activity" with the defendants.  (D.N. 4, PageID.49 ¶ 46)  First, Clark told Dr. Neely (his OGBYN professor) that "you are not going to treat me that way" and "you are the worst preceptor I have ever had." (*Id.*)  Clark told Dr. Alexander, a resident physician in the Internal Medicine Program, that Alexander was "unjust" and "unfair" and that his "criticism and overbearing behavior toward Clark regarding his performance on wards[] was unwarranted." (*Id.*, PageID.51–52 ¶ 54)

intellectual content or even discernable purpose, and amounts to nothing more than expression of personal proclivity designed to disrupt the educational process, . . . is not protected." *Salehpour*, 159 F.3d at 208; *see also Lowery v. Euverard,* 497 F.3d 584, 588 (6th Cir. 2007) (finding that a school may discipline a student to ensure "appropriate discipline in the operation of the school" without violating that student's First Amendment rights.)  Absent an allegation that the plaintiff engaged in protected speech, a plaintiff has not stated a claim for First Amendment retaliation.  *Id.* ("Plaintiff's claim fails to present a constitutional violation because Plaintiff's conduct did not constitute protected speech).

### b.    Content and Viewpoint Discrimination

Clark alleges that the first defendants violated his constitutional rights by discriminating against the content and viewpoint of his speech with respect to (1) "the speaker invited by Clark regarding political and religious perspectives on the pro-life topic," and (2) "the verbal expressions of Clark regarding the proper treatment of medical students during their clinical practicum experience."  (D.N. 4, PageID.62 ¶ 95)  The amended complaint alleges that the defendants singled Clark out for disfavored treatment because they did not like his views.  (*Id.* at ¶ 95)  *See Christian Legal Soc'y Chapter of the Univ. of Cal. v. Martinez*, 561 U.S. 661, 694 (2010) (finding that viewpoint discrimination occurs when the state singles out an individual for disfavored treatment because of their point of view).

Clark first alleges that the defendants discriminated against him because of the viewpoint of the speaker that he brought to campus (D.N. 4, PageID.62 ¶ 95). But the amended complaint contains no factual allegations to suggest that the defendants' decision to dismiss Clark was motivated by his, or the speaker's, political or religious views.  *See Ctr. For Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 378 (6th Cir. 2011) (affirming dismissal where "the Amended

Complaint fail[ed] to adequately plead that any adverse actions by Defendants were motivated by a desire to discriminate or retaliate against Plaintiffs on account of their constitutionally protected expressive activities") (citing *Iqbal*, 556 U.S. at 680).   Instead, Clark merely alleges that he expressed his views publicly and was later disciplined.  (D.N. 4, PageID.62 ¶ 96; *see generally* D.N. 4)  These allegations are insufficient to allege a First Amendment violation.  *See Napolitano*, 648 F.3d at 378.

Clark next alleges that the defendants discriminated against him because of the content and viewpoint of his speech when he criticized ULSOM faculty.  (D.N. 4, PageID.62 ¶ 95)  The amended complaint alleges that Clark made several comments to his instructors "regarding the proper treatment of medical students," and that the defendants "evaluated the content and viewpoint" of those statements when they decided to take "adverse academic actions against him." (*Id.* at ¶¶ 95–96)  The Sixth Circuit's decision in *Harris v. Morris* is instructive here.  No. 16-1373, 2017 U.S. App. LEXIS 21425, at *7 (6th Cir. Oct. 26, 2017).  In *Harris*, the plaintiff was pursuing a master's degree when he failed two of his courses.  *Id.* at *2.  Harris attempted to appeal his grades through several university grievance procedures, and when those efforts failed, he filed suit alleging that the school engaged in viewpoint discrimination among several other claims.  *Id.* at *3.  The Sixth Circuit affirmed the district court's dismissal of the viewpoint discrimination claim because, although Harris "alleged that the grievance process violated his right to free speech and discriminated against him based on his viewpoint. . . . he never cited any speech or viewpoint that caused the defendants to discriminate against him."  *Id.*  The Court ultimately found that "Harris failed to allege that he engaged in any constitutionally protected conduct" at all.  *Id*. at *7 (citing *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 723 (6th Cir. 2010)).  Similar to Harris, Clark alleges that the defendants engaged in viewpoint discrimination because they dismissed him

14

after he objected to their academic procedures.  (D.N. 4, PageID.61 ¶ 94)  The Court finds that Clark's allegations are insufficient to state a claim for viewpoint discrimination for the same reasons as the Sixth Circuit articulated in *Harris*: Clark has not alleged that he engaged in constitutionally protected conduct, nor has he identified the viewpoint on which the defendants based their discrimination.  (D.N. 4); *Harris*, 2017 U.S. App. LEXIS 21425, at *7.

### c.    Procedural Due Process

To properly allege a procedural due process violation, a plaintiff must plead that (1) he had a property or liberty interest of which he was deprived; and (2) the state did not afford him adequate procedural rights prior to depriving him of the interest.  *Cottrell v. Greenwell*, 3:17-cv-00041-RGJ-CHL, 2019 U.S. Dist. LEXIS 43749, at *11 (W.D. Ky. 2019).  The first defendants argue that Clark did not allege a protected property interest (D.N. 9, PageID.98), and that even if he did, he failed to state a claim under § 1983  (D.N. 9, PageID.101–04)  Defendants' first argument is meritless, as Clark alleges that the Supreme Court has recognized a "sufficient property or liberty interest involved in the continuation of a medical school education to apply the 14th Amendment" (D.N. 18, PageID.164), and the Sixth Circuit has consistently held that public-university students are entitled to due process before "significant disciplinary decisions."  *See, e.g.*, *Doe v. Univ. of Cincinnati*, 872 F.3d 393, 399 (6th Cir. 2017) (citing *Flaim v. Med. Coll. of Ohio*, 418 F.3d 629, 633 (6th Cir. 2005)); *Doe v. Cummins*, 662 F. App'x 437, 445 (6th Cir. 2016).  The Court therefore turns to the first defendants' argument that Clark failed to state a procedural due process claim.

To determine what kind of process an individual is due, a court weighs the factors set forth in *Matthews*.  *Kaplan v. Univ. of Louisville*, 10 F.4th 569, 578 (6th Cir. 2021) (citing *Matthews v. Eldridge*, 424 U.S. 319 (1976)).  It considers: (1) the nature of the private interest subject to official action; (2) the risk of erroneous deprivation under the current procedures used, and the value of

any additional procedural safeguards; and (3) the governmental interest, including the burden any additional or substitute procedures might entail. *Id.* In university disciplinary proceedings, these factors entitle an accused student to "at least receive the following pre-expulsion: (1) notice of the charges; (2) an opportunity to be heard." *Flaim*, 418 F.3d at 634. The degree of notice, and the type of hearing, will vary depending on context. *Id.* Here, Clark acknowledges that "he was given some manner of notice and opportunity to be heard," but he nevertheless alleges that the defendants violated his procedural due process rights in six ways. (D.N. 4, PageID.63 ¶ 101)

Clark first alleges that he was denied due process because the defendants "failed to adhere to University policy and the faculty Code of Conduct." (*Id.*, PageID.64 ¶ 102) Whether the university "followed its own procedures, however, is not the proper inquiry. 'Violation of a state's formal procedure…does not in and of itself implicate constitutional due process concerns.'" *Ji Qiang Xu v. Mich. State Univ.*, 195  F. App'x 452, 457 (6th Cir. 2006) (quoting *Purisch v. Tenn. Tech. Univ.*, 76 F.3d 1414, 1423 (6th Cir. 1996) (citation omitted)). Absent additional factual allegations, Clark has failed to state a claim for a procedural due process violation on this ground. *See id.* ("A state cannot be said to have a federal due process obligation to follow all of its procedures; such a system would result in the constitutionalizing of every state rule, and would not be administrable.") (quoting *Levine v. Torvik*, 986 F.2d 1506, 1515 (6th Cir. 1993)).

Clark claims that the defendants violated his right to due process by "failing to adequately consider alternative methods of discipline." (D.N. 4, PageID.64 ¶ 102) Clark points to no authority, nor is the Court aware of any, that requires a university to consider alternative methods of discipline before dismissing a student in order to comport with due process. This allegation thus does not give rise to a plausible procedural due process claim. *See League of United Latin American Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (finding that "a complaint must

16

contain…all the material elements to sustain recovery under some viable legal theory").

The amended complaint alleges the defendants "at best misrepresent[ed] and at worst falsif[ied] the official transcription of the [SRC] meeting and refus[ed] to issue corrections despite Clark's repeated requests." (D.N. 4, PageID.65 ¶ 102)  It does not allege which defendant falsified the meeting transcript, however; nor does it allege when this falsification occurred or what information was falsified. (*See generally* D.N. 4)   This kind of bare factual assertion fails to state a claim under Rule 12(b)(6).  *Iqbal*, 556 U.S. at 678.

The defendants allegedly failed to provide Clark with "access to documents necessary for his presentation and defense." (D.N. 4, PageID.65 ¶ 102)  The amended complaint does not identify which defendant denied Clark access to documents; rather, it alleges that "Clark formally requested emails and documents from the ULSOM which he believed necessary to ensure that his defense would be complete and professional. ULSOM repeatedly denied most of his requests." (*Id.*, PageID.56 ¶ 70)  ULSOM is not a defendant in this case.  Even assuming that any of the named defendants *did* deny Clark's request for documents, such a denial would not violate a due process right, as the Sixth Circuit has recognized no right to formal discovery in university disciplinary proceedings. *Doe v. Ohio State Univ.*, 219 F. Supp. 3d 645, 659 (S.D. Ohio 2016).

Clark alleges that the defendants violated his "FERPA rights." (D.N. 4, PageID.65 ¶ 102) FERPA refers to the Family Educational Rights and Privacy Act, 20 U.S.C. § 1232 (2022), which "creates a binding obligation on schools that accept federal funds not to release educational records without consent." *United States v. Miami Univ.*, 294 F.3d 797, 824 n.11 (6th Cir 2002).  Clark does not allege who violated his FERPA rights, in what way they were violated, or what educational records were disclosed in violation of the statute. (D.N. 4)  This claim fails under Rule 12(b)(6).  *Iqbal*, 556 U.S. at 678.

Clark's final procedural due process allegation is that the defendants obstructed his "attempt at a formal University grievance to overturn his academic dismissal." (D.N. 4, PageID.65 ¶ 102). Clark does not identify the individual or individuals who prevented his attempt. (*Id.*) Rather, he alleges that he was unable to pursue the grievance process "[d]ue to repeated and continual University obstruction including continued refusal to release records by both faculty and the Office of University Counsel, [and] repeated dishonesty on behalf of personnel, both inside and outside the academic unit of the School of Medicine." (D.N. 4, PageID.57 ¶ 73) To state a claim for a constitutional violation under § 1983, the plaintiff must identify the government official responsible for the violation. *See Iqbal*, 556 U.S. at 676 (finding that, to plead a § 1983 claim, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution"). Clark has not done so, and even if he had named a specific defendant who prevented his appeal, the amended complaint would not sufficiently allege a procedural due process violation because there is no constitutional right to appeal a disciplinary proceeding in a public university. *Heyne v. Metro. Nashville Pub. Sch*, 655 F.3d 556, 569 (6th Cir. 2011) (citing *Flaim*, 418 F.3d at 642).

### d.    Substantive Due Process

Clark added a substantive due process claim in his amended complaint. (D.N. 4, PageID.64–66 ¶¶ 104–10) He alleges that the defendants dismissed him in an "arbitrary and capricious manner that substantially departed from academic norms." (D.N. 4, PageID.64 ¶ 105) Defendants argue that this claim is barred by the statute of limitations. (D.N. 9, PageID.88) The Court need not address the statute-of-limitations issue because, as explained below, even if the additional claim were permitted under Rule 15, Clark fails to state a claim for relief.

There are two forms of substantive due process violations: "(1) deprivations of a particular

constitutional guarantee, and (2) actions that shock the conscience." *Doe v. Miami Univ.*, 882 F.3d 579, 597 (6th Cir. 2018) (citing *Valot v. Southeast Local Sch. Dist. Bd. of Educ.*, 107 F.3d 1220, 1228 (6th Cir. 1997)).  Clark has not alleged a deprivation of a particular constitutional guarantee as the Sixth Circuit has not recognized "an independent property interest in pursuing a post-secondary education." *Id.* at 598 ("The interests protected by substantive due process are of course much narrower than those protected by procedural due process." (quoting *Bell v. Ohio State Univ.*, 351 F.3d 240, 249–50 (6th Cir. 2003))).  Similarly, Clark has not alleged any conduct that "shocks the conscience." *Id.* at 597.  State action meets this standard when it is "arbitrary, or conscience shocking, in a constitutional sense." *Handy–Clay v. City of Memphis*, 695 F.3d 531, 547 (6th Cir. 2012) (quoting *City of Sacramento v. Lewis*, 523 U.S. 833, 847 (1998)).  This characterization only applies to the most egregious state conduct.  *See e.g.*, *Flaim*, 418 F.3d at 643 (describing an example of conscience-shocking conduct drawn from a case in which two African–American students were expelled from Alabama State College, without notice or a hearing, "for seeking to purchase lunch at a publicly owned grill in the basement of the Montgomery, Alabama, county courthouse") (citing *Dixon v. Ala. State Bd. of Educ.*, 294 F.2d 150 (5th Cir. 1961)).  Clark has not alleged any conduct that meets that high bar. *See Handy-Clay*, 695 F.3d at 547 (dismissing an employee's claim that her boss violated her substantive due process rights for firing her after her "repeated complaints about malfeasance and corruption" because  her claims were ultimately rooted in the First Amendment and thus not actionable under substantive due process.).

e.    **Equal Protection**

Clark finally alleges that the defendants violated his right to equal protection by "punish[ing] Clark for expressing his views…when there are students who, when expressing contrary views…are not subject to the same or similar restrictions."  (D.N. 4, PageID.66–67 ¶ 112)

The first defendants argue that Clark fails to state a claim because his amended complaint contains only a "litany of events that Defendants allegedly inflicted on him for his views, claiming that no other students were subjected to similar treatment." (D.N. 9, PageID.104) Clark did not reply to this argument. (D.N. 18) Instead, he asserted again the general claim that the defendants "violated his constitutional right[ to]…equal protection under the law." (*Id.*, PageID.165)

To state an equal-protection claim, a plaintiff must allege that the state made a distinction that "burden[ed] a fundamental right, target[ed] a suspect class, or intentionally treat[ed] one differently from others similarly situated without any rational basis for the difference." *Miami Univ.*, 882 F.3d at 595 (quoting *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 312 (6th Cir. 2005)). Here, Clark has not pleaded any facts to support his allegation that other students were treated differently than he was after making similar statements. (D.N. 4) Clark does not identify any other students who made similar comments but were not disciplined. (*Id.*) Indeed, he does not allege that any other students made similar comments at all. (*Id.*) Absent factual allegations that Clark was treated differently than other students, his equal-protection claim fails. *Ctr. For Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011) (affirming the dismissal of a complaint where the plaintiff did not adequately plead "that the government treated plaintiff disparately as compared to similarly situated persons"); *Meriwether v. Hartop*, 992 F.3d 492, 518 n.9 (6th Cir. 2021); *see also Kollaritsch v. Mich. State Univ. Bd. of Trustees*, 944 F.3d 613, 627 (6th Cir. 2019) (finding defendant entitled to qualified immunity where "[t]he complaint d[id] not allege facts showing that [the defendant] violated [the plaintiff's] clearly established constitutional right to equal protection").

In sum, Clark fails to allege "sufficient factual matter, accepted as true, to 'state a claim for relief'" for violations of his constitutional rights to free speech, due process, or equal protection.

*Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570). Accordingly, the first defendants are entitled to qualified immunity for the individual-capacity claims. *Kollaritsch*, 994 F.3d at 627. Additionally, because Clark fails to state a claim that his constitutional rights were violated, the Court need not consider the defendants' argument that they are entitled to sovereign immunity. (D.N. 9, PageID.91); *See Pinkney v. Berrien Cnty.*, 2022 U.S. App. LEXIS 23224, at *6 (6th Cir. 2022) (explaining a court "need not resolve the sovereign immunity issue" if it finds that the plaintiff "has not alleged a constitutional violation").

## B.     SECOND MOTION TO DISMISS

Upon being served, Koch, Crump, Rao, and Neely (second defendants) filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. (D.N. 26, PageID.211) They argue that (1) the statute of limitations bars all of Clark's claims against them (*id.*, PageID.216); (2) sovereign immunity bars Clark's official-capacity claims against them (*id.*, PageID.219); and (3) Clark failed to state a claim with respect to any individual defendant. (*id.*, PageID.221) For the reasons explained below, the second motion to dismiss will also be granted.

### 1.     Statute of Limitations

Koch, Crump, Rao, and Neely argue that Clark's claims against them are time-barred as the one-year statute of limitations had run by the time Clark filed his initial and amended complaints. (D.N. 26, PageID.216–20) The Court need not consider this argument because, even if the claims were not time-barred, Clark has failed to state a claim that the second defendants violated his constitutional rights. *See* II.A.2.

### 2.     Sovereign Immunity

The Court need not consider whether the defendants are entitled to sovereign immunity because Clark has failed to allege a violation of his constitutional rights. *See Pinkney*, 2022 U.S.

App. LEXIS 23224, at *6.

### 3.    Qualified Immunity

For the reasons discussed in Section II.A.2., the Court finds that Clark fails to plausibly allege that the second defendants, in their individual capacities, violated his constitutional rights. Accordingly, the second defendants are entitled to qualified immunity. *Saucier v. Katz*, 533 U.S. 194, 201 (2001) (finding that if no constitutional right would have been violated on the facts alleged, the officer will be entitled to qualified immunity).

### III.

The Court finds that Clark has failed to state a claim that Bendapudi, Gonzalez, Ganzel, Mittel, Shaw, Koch, Crump, Rao, or Neely violated his constitutional rights in their individual capacities. The defendants are therefore entitled to qualified immunity. The Court need not consider whether the defendants are entitled to sovereign immunity for the official-capacity claims because Clark has failed to allege a constitutional violation. Accordingly, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** as follows:

(1)    The motion to dismiss filed by Defendants Bendapudi, Gonzalez, Ganzel, Mittel, and Shaw (D.N. 9) is **GRANTED**. Clark's claims against Defendants Bendapudi, Gonzalez, Ganzel, Mittel, and Shaw are **DISMISSED**. The Clerk of Court is **DIRECTED** to terminate Bendapudi, Gonzalez, Ganzel, Mittel, and Shaw as defendants in the record of this matter.

(2)    The motion to dismiss filed by Defendants Koch, Crump, Rao, and Neely (D.N. 26) is **GRANTED**. Clark's claims against Defendants Koch, Crump, Rao, and Neely are **DISMISSED**. The Clerk of Court is **DIRECTED** to terminate Koch, Crump, Rao, and Neely as defendants in the record of this matter.

(3)      Clark shall have **fourteen (14) days from entry of this Order to SHOW CAUSE**

why this action against U of L should not be dismissed pursuant to Rule 4(m) of the Federal Rules

of Civil Procedure.

September 30, 2022

**David J. Hale, Judge**
**United States District Court**