# UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

Deborah S. Hunt
Clerk

100 EAST FIFTH STREET, ROOM 540
POTTER STEWART U.S. COURTHOUSE
CINCINNATI, OHIO 45202-3988

Tel. (513) 564-7000
www.ca6.uscourts.gov

Filed: July 25, 2023

Mr. Matthew Warren Barszcz
Ms. Suzanne Marino
Ms. Donna King Perry
Dinsmore & Shohl
101 S. Fifth Street
Suite 2500
Louisville, KY 40202

Mr. Timothy Denison
Timothy Denison
235 S. Fifth Street
Suite 300
Louisville, KY 40202-3226

Re:  Case No. 22-5983, *Austin Clark v. Neeli Bendapudi, et al*
     Originating Case No. : 3:21-cv-00480

Dear Counsel,

The Court issued the enclosed opinion today in this case.

Enclosed are the court's unpublished opinion and judgment, entered in conformity with Rule 36, Federal Rules of Appellate Procedure.

Sincerely yours,

s/Cathryn Lovely
Opinions Deputy

cc:  Mr. James J. Vilt Jr.

Enclosures

Mandate to issue

NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0344n.06

Case No. 22-5983

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | |
|---|---|
| AUSTIN ROY CLARK,<br><br>    Plaintiff - Appellant,<br><br>v.<br><br>NEELI BENDAPUDI, et al.,<br><br>    Defendants - Appellees. | FILED<br>Jul 25, 2023<br>DEBORAH S. HUNT, Clerk<br><br>ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF KENTUCKY<br><br>OPINION |

Before: GIBBONS, READLER, and DAVIS, Circuit Judges.

JULIA SMITH GIBBONS, Circuit Judge. Plaintiff Austin Clark, a medical student at the University of Louisville, was formally dismissed from the university for failing his Internal Medicine clerkship and for exhibiting unprofessional conduct in the clinical setting. He sued the University of Louisville and fourteen university employees in their individual and official capacities, alleging violations of his constitutional rights to free speech, due process, and equal protection pursuant to 42 U.S.C. § 1983. The district court granted all of the defendants' motions to dismiss. Clark now appeals the district court's dismissal of his discrimination, retaliation, and equal protection claims. Because Clark failed to serve multiple defendants and his remaining claims fail to allege any constitutional violation, we affirm.

**I.**

In 2017, Clark enrolled as a medical student at the University of Louisville School of Medicine ("ULSOM"), attending both the Madisonville Trover Campus ("Trover Campus") and the Jackson Street Louisville Campus ("Jackson Street Campus"). During his second year, Clark

No. 22-5983, *Clark v. Bendapudi, et al.*

served as president of two student organizations: Medical Students for Life and the Christian Medical and Dental Association. In November 2018, Clark invited a "Christian" speaker to the Jackson Street Campus to present "as to when life actually began," a presentation that Clark alleges generated opposition among faculty and students. DE 4, Page ID 48-49. Clark completed his first two years of medical school with passing grades.

Clark began his third year of medical school with clinical instruction at the Trover Campus. He had a clinical rotation in Obstetrics and Gynecology ("OBGYN") with Dr. Thomas Neely. Clark alleges that, on August 10, 2019, he engaged in "respectful verbal oppositional activity regarding his treatment" from Neely. *Id.* at Page ID 49. According to Clark, he told Neely that Neely was "the worst preceptor [he had] ever had" and that Neely could not "treat [him] that way." *Id.* In response, Neely allegedly called Clark stupid and asked if his brain was functioning. Clark alleges that, later that day, Neely spoke with two other faculty members about Clark's behavior: Mohan Rao, the Surgery Program Director for the Trover Campus, and Bill Crump, Assistant Dean and Operating Dean for the Trover Campus. Rao subsequently sent a letter to Crump stating that the Madisonville Surgical OBGYN faculty "w[ould] not accept [Clark] as a student" at the Trover Campus. *Id.* at Page ID 50. After receiving the letter, Crump instructed Clark that it would be against Clark's interest to return to the Trover Campus.

Clark returned to the Jackson Street Campus. Olivia Mittel, an Assistant Dean, required Clark to sign a "professionalism contract" at that point, which Clark alleges was due to his interaction with Neely. *Id.* at Page ID 51. Three weeks after signing the contract, Clark met again with Mittel and Dr. Sara Petruska, Clerkship Director of the OBGYN Department at the Jackson Street Campus, to discuss Clark's interactions with Neely and Rao. According to Clark, after he

No. 22-5983, *Clark v. Bendapudi, et al.*

tried to defend himself, Petruska and Mittel told him that he "only sees himself as a victim." *Id.* at Page ID 51.

Several months later, Clark alleges that he again engaged in "respectful verbal oppositional activity" with a supervisor. *Id.* at Page ID 51-52. This time, Clark told Jon Alexander, a resident physician in the Internal Medicine Program, that Alexander's "criticism and overbearing behavior toward Clark regarding [Clark's] performance on wards, [sic] was unwarranted," as well as "unjust" and "unfair." *Id.* at 52. Alexander allegedly responded by stating, "I am a third-year resident and you are a student." *Id.* Alexander gave Clark a failing grade for the Internal Medicine Clinic, despite signing a memorandum the week before stating that Clark had "exceeded expectations" in the clinic. *Id.*

After that conversation, Dr. Samuel Reynolds, another resident physician in the Internal Medicine Program and colleague of Alexander, recommended to the Internal Medicine Clerkship Director at the Jackson Street Campus that Clark be removed from the course and given a failing grade. Clark alleges that the recommendation was made based on Clark's engagement with Alexander. Clark alleges that Reynolds also "physically harassed and bullied" him the next day in response to Clark's interaction with Alexander. *Id.* In response to that behavior, Clark claimed that he drafted a "mistreatment complaint" that day and sent it to Monica Shaw (an Assistant Dean at the Jackson Street Campus), Mittel, Jennifer Koch (the Internal Medicine Program Director at the Jackson Street Campus), and Dr. Juliana Brown (the Internal Medicine Clerkship Director at the Jackson Street Campus). *Id.* at Page ID 52-53.

Ten days after Clark and Alexander's conversation, Clark received a failing performance evaluation from Dr. Cristina Giles, another resident physician in the Internal Medicine Program at the Jackson Street Campus. Giles had previously signed a memorandum stating that Clark had

- 3 -

No. 22-5983, *Clark v. Bendapudi, et al.*

"exceeded performance expectations," and Clark alleges the failing evaluation was "solely as a result of the aforementioned protected activities." *Id.* at 53. Due to his failing evaluations, Clark failed the Internal Medicine Clerkship.

Clark's failure in Internal Medicine "triggered a meeting with the Student Promotions Committee of the Office of Medical Student Affairs" ("SPC") where he faced disciplinary action. *Id.* The meeting was delayed due to the spread of COVID-19, allowing Clark to begin his surgical rotation. Clark alleges that Tony Ganzel, Dean of the ULSOM, called Clark's preceptor on the first day of Clark's surgical rotation, although the content of the phone call was not included in the amended complaint. Clark later received another failing evaluation from his supervising surgery resident—apparently a subordinate of the preceptor receiving Ganzel's call. In the evaluation, the surgery resident referenced Clark's belief that his previous Internal Medicine evaluations were biased. Clark claims that he never mentioned the Internal Medicine rotation to that resident.

Clark's meeting with the SPC was scheduled for May 29, 2020. According to Clark, although the initial meeting was intended to discuss his Internal Medicine rotation alone, the ULSOM had changed its disciplinary policy so that the meeting would encompass his "entire academic record." *Id.* at 54-55. Clark alleges that ULSOM denied most of his requests for emails and documents that he needed from the ULSOM to prepare. Clark also emailed Assistant Dean Mittel with other evidence for his defense, which she stated she would consider. And two days before the meeting, Clark filed a complaint with the Liaison Committee for Medical Education ("LCME") regarding the university's alleged failure to "correct such demeaning treatment and due to substantial restrictions on Clark's First (1st) Amendment right to free speech." *Id.* at Page ID 55. The next day, Clark filed a complaint with the Department of Health and Human Services Office for Civil Rights ("HHS OCR") on the same grounds.

- 4 -

No. 22-5983, *Clark v. Bendapudi, et al.*

During Clark's May 29, 2020 meeting with the SPC, Clark alleges that he "(1) reiterated his concerns regarding restrictions on his constitutional right to free speech, viewpoint discrimination, and student abuse, (2) . . . complain[ed] about the lack of due process and lack of transparency, and (3) . . . attempt[ed] to defend himself." *Id.* at Page ID 56. The SPC recommended Clark's dismissal to Dean Ganzel, who upheld the recommendation and formally dismissed Clark from the ULSOM. Clark claimed that he attempted to formally appeal his dismissal through the ULSOM's academic grievance procedures but was unable to do so due to "repeated and continual University obstruction." *Id.* at Page ID 57.

Clark then filed this lawsuit pursuant to 42 U.S.C. § 1983, alleging that fourteen named defendants violated his constitutional rights to free speech, procedural due process, and equal protection. His amended complaint added the University of Louisville as a defendant and added a substantive due process claim. All of the served defendants moved to dismiss. In their motions, they raised the affirmative defenses of sovereign immunity and qualified immunity, argued that the claims against Defendants Koch, Crump, Rao, and Neely were barred by the one-year statute of limitations on § 1983 claims in Kentucky, and argued that Clark failed to state a claim that his constitutional rights were violated.

The district court granted both motions to dismiss. It held that, because Clark failed to plausibly allege a violation of his constitutional rights, the defendants were entitled to qualified immunity. The district court also ordered Clark to show cause why the action against the unserved defendants should not be dismissed pursuant to Federal Rule 4(m) for failure to serve process. Because Clark failed to respond to the show cause orders, the court later dismissed the unserved individuals from the action. Clark timely appealed the district court's dismissals of his discrimination, retaliation, and equal protection claims.

- 5 -

No. 22-5983, *Clark v. Bendapudi, et al.*

## II.

We review a district court's grant of a motion to dismiss de novo. *Lipman v. Budish*, 974 F.3d 726, 740 (6th Cir. 2020). A motion to dismiss is properly granted if the complaint "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A complaint must "contain sufficient factual matter. . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). We construe the complaint in the light most favorable to the plaintiff, accepting factual allegations as true and drawing all reasonable inferences in the plaintiff's favor. *Royal Truck & Trailer Sales and Serv., Inc. v. Kraft*, 974 F.3d 756, 758 (6th Cir. 2020). However, we do not accept "conclusory legal allegations that do not include specific facts necessary to establish the cause of action." *Bickerstaff v. Lucarelli*, 830 F.3d 388, 396 (6th Cir. 2016) (quoting *New Albany Tractor, Inc. v. Louisville Tractor, Inc.*, 650 F.3d 1046, 1050 (6th Cir. 2011)).

## III.

We first address issues regarding service of process before considering whether Clark stated any claim for which he is entitled to relief. Further, because we conclude that Clark failed to establish that his constitutional rights were violated, we affirm the district court's dismissal of his claims without addressing whether any of his claims were barred by the applicable statute of limitations.

### 1. Dismissal of Unserved Defendants

Although the district court dismissed multiple defendants pursuant to Federal Rule 4(m) for failure to serve process, Clark references all named defendants—served and unserved—in his appellate briefing. But Clark never effected service of process upon defendants Petruska, Brown, Giles, Alexander, Reynolds, and the University of Louisville, and the record contains no evidence

No. 22-5983, *Clark v. Bendapudi, et al.*

that Clark responded to the district court's show cause order as to why his claims against them should not be dismissed under Rule 4(m).  By failing to present any argument to the district court, Clark waived his right to challenge the dismissal of these defendants on appeal.  *United States v. Universal Mgmt. Servs.*, 191 F.3d 750, 758-59 (6th Cir. 1999).  We affirm the district court's dismissal of any claims against these defendants.

### 2. Failure to State a Claim

On appeal, Clark argues that the defendants were not entitled to qualified immunity on the First Amendment and Equal Protection claims and that he validly stated claims that his constitutional rights were violated.  The defendants maintain that dismissal was proper because Clark failed to adequately allege a violation of his constitutional rights, entitling them to qualified immunity.

For a qualified immunity analysis, we consider two issues: whether a constitutional violation occurred and, if so, whether the constitutional right at issue was clearly established.  *Pearson v. Callahan*, 555 U.S. 223, 232, 236 (2009).  Here, the threshold consideration is whether the facts alleged in the amended complaint plausibly demonstrate the existence of a constitutional violation.  *Hardy v. Jefferson Cmty. Coll.*, 260 F.3d 671, 682 (6th Cir. 2001) (noting that the first prong of qualified immunity is met when First Amendment retaliation is adequately alleged).  Because the amended complaint fails to plausibly allege any constitutional violation, we affirm.

### 1. Retaliation

In the amended complaint, Clark made three claims of retaliation.  First, he claimed that he was subjected to heightened professional scrutiny, awarded failing grades, and ultimately dismissed from medical school for his "political and religious beliefs as exhibited by his activities in . . . Medical Students For Life and the Christian Medical and Dental Association."  DE 4, Am.

- 7 -

No. 22-5983, *Clark v. Bendapudi, et al.*

Compl., Page ID 58. Second, he claimed that he suffered the same retaliation for filing complaints against ULSOM with the LSME and with the HHS OCR. Finally, he alleged that he was retaliated against for engaging in "verbal and written attempts to obtain a modicum of respect as a medical student." *Id.* On appeal, Clark only pursues his first theory for retaliation ("retaliation for expression of religious beliefs," *see* CA6 R. 38, Corr. Appellant Br. at 9–12), abandoning his other claims, *see In re Fifth Third Early Access Cash Advance Litig.*, 925 F.3d 265, 276 n.2 (6th Cir. 2019) (holding that a party forfeits for appellate review any alternative theories for liability raised in the complaint that lack developed argument on appeal).

To establish a First Amendment retaliation claim, Clark must show that "(1) he engaged in protected conduct; (2) the defendants took an adverse action against him; and (3) a causal connection exists between the two." *Rudd v. City of Norton Shores*, 977 F.3d 503, 513 (6th Cir. 2020) (citing *Novak v. City of Parma*, 932 F.3d 421, 427 (6th Cir. 2019)). For a causal connection to exist, a decisionmaker must have been aware of the plaintiff's protected activity. *Thaddeus-X v. Blatter*, 175 F.3d 378, 387 n.3 (6th Cir. 1999) ("[T]he defendant must have known about the protected activity in order for it to have motivated the adverse action.").

Clark's retaliation claim fails because he does not establish any causal connection between his personal beliefs, as expressed through his extracurricular activities, and any adverse action taken against him. The amended complaint includes no facts demonstrating that any identifiable defendants were aware of Clark's invitation to a "Christian" speaker to express pro-life beliefs or the contents of the presentation. *See Thaddeus-X,* 175 F.3d at 387 n.3; *see also Edgar v. City of Collierville*, 160 F. App'x 440, 442-43 (6th Cir. 2005) (affirming dismissal of First Amendment retaliation claim where decisionmaker was unaware of plaintiff's previous union activities). Nor does it allege how any specific defendant was motivated to scrutinize Clark more carefully,

No. 22-5983, *Clark v. Bendapudi, et al.*

evaluate him negatively, or dismiss Clark from medical school due to Clark's engagement with a Christian speaker. *See Koch v. Dep't of Nat. Res., Div. of Wildlife*, 858 F. App'x 832, 837 (6th Cir. 2021) (finding that a claim for retaliation requires the allegation that the adverse action was "motivated at least in part" by the protected conduct (citing *Mezibov v. Allen*, 411 F.3d 712, 717 (6th Cir. 2005))); *see also Boxill v. O'Grady*, 935 F.3d 510, 518 (6th Cir. 2019) ("Summary reference to a single, five-headed 'Defendants' does not support a reasonable inference that *each* Defendant is liable for retaliation.") (emphasis in original).

### 2. Content and Viewpoint Discrimination

Similar to his retaliation argument, Clark's focus on appeal is on his allegations that the defendants violated his constitutional rights by discriminating against the content and viewpoint of his speech with respect to the pro-life speaker he invited and his verbal interactions with faculty. But, again, Clark does not point to any constitutionally protected speech or viewpoint he expressed that caused *any* defendant to discriminate against him. As previously mentioned, the amended complaint contains no specific allegations that any faculty member was aware of Clark's invitation to the pro-life speaker. *Boxill,* 935 F.3d at 518. We therefore affirm the dismissal of Clark's claims of discrimination.

### 3. Equal Protection

Lastly, to state an equal protection claim, Clark had to "adequately plead that the government treated [him] 'disparately as compared to similarly situated persons and that such disparate treatment either burden[ed] a fundamental right, target[ed] a suspect class, or ha[d] no rational basis.'" *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011) (quoting *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby*, 470 F.3d 286, 299 (6th Cir. 2006)). The defendants contend that Clark waived the right to argue this issue on appeal

No. 22-5983, *Clark v. Bendapudi, et al.*

because he failed to object to the defendants' argument in the district court.  On appeal, Clark does not respond to the argument of waiver.

Before the district court, Clark never articulated why his equal protection claim should have survived dismissal.  Clark cannot now seek a substantive review of the district court's dismissal of this claim when he failed to challenge that dismissal before the district court.  *Bldg. Serv. Loc. 47 Cleaning Contractors Pension Plan v. Grandview Raceway*, 46 F.3d 1392, 1399 (6th Cir. 1995).  Indeed, without objection from Clark against waiver in his appellate briefing, we easily deem this claim waived.

**IV.**

For the foregoing reasons, we affirm.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

No. 22-5983

AUSTIN ROY CLARK,

    Plaintiff - Appellant,

v.

NEELI BENDAPUDI, President of the University of Louisville, in her official and individual capacities, et al.,

    Defendants - Appellees.

**FILED**
Jul 25, 2023
DEBORAH S. HUNT, Clerk

Before: GIBBONS, READLER, and DAVIS, Circuit Judges.

## JUDGMENT

On Appeal from the United States District Court
for the Western District of Kentucky at Louisville.

    THIS CAUSE was heard on the record from the district court and was submitted on the briefs without oral argument.

    IN CONSIDERATION THEREOF, it is ORDERED that the judgment of the district court is AFFIRMED in its entirety.

**ENTERED BY ORDER OF THE COURT**

Deborah S. Hunt, Clerk